Gary BARNES, Appellant,

v.

**DISTRICT OF COLUMBIA BOARD OF PAROLE, et al., Appellees.**

**No. 98–SP–521.**

District of Columbia Court of Appeals.

Submitted Nov. 1, 1999.
Decided Sept. 28, 2000.

Gary Barnes, filed a brief pro se.

John M. Ferren, Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Mary L. Wilson, Assistant Corporation Counsel, were on the brief for appellees.

---

Before TERRY, Associate Judge, and PRYOR and MACK, Senior Judges.

TERRY, Associate Judge:

Appellant Barnes appeals from the denial of his petition for a writ of habeas corpus, in which he challenged the revocation of his parole by the District of Columbia Board of Parole ("the Board"). He claims that the Board improperly considered evidence that he had been charged with first-degree murder since the charge was later dropped. Finding this argument unpersuasive, we affirm.

I

In 1985 Barnes was sentenced to an aggregate prison term of eight to twenty-five years for armed kidnapping, armed robbery, unauthorized use of a vehicle, destruction of property, and carrying a pistol without a license. The Board first granted Barnes parole on September 4, 1991. As a special condition of his release, Barnes agreed to participate in a narcotics surveillance program. On February 13, 1996, the Board issued a warrant for Barnes' arrest based on his violation of parole. The Board made a probable cause determination that Barnes had failed to attend two scheduled meetings with his parole officer and had failed to participate in the narcotics surveillance program, in that he had not submitted to drug testing, since September 25, 1995.

Thereafter, on April 12, 1996, Barnes and another man named Singletary were arrested and charged with first-degree murder. Barnes'· parole violator warrant was executed soon thereafter, and he was taken into custody under the warrant. The murder charge was subsequently dismissed on April 29. The Board then informed Barnes that it would conduct a parole revocation hearing based on his fail-

ure to report to his parole officer as directed and his failure to submit to drug testing.

On May 10, 1996, Barnes appeared before the Board for a parole revocation hearing. He was represented by counsel but presented no witnesses. He did admit, however, that he had failed to comply with the narcotics surveillance by not making himself available for urinalysis. As for twice failing to report to his parole officer, he explained that "it was an 'oversight' since he had lost his job and was in the process of finding a new one." The Board found that Barnes had violated his parole, but postponed a final decision on revocation so that it could consider possible criminal violations of parole arising out of the dismissed murder charge.

At the next hearing on July 30, 1996, two witnesses testified and implicated Barnes in the murder.[1] Carmelita Metz, Barnes' former girl friend, testified that she asked Barnes and Singletary to lure the victim to an apartment building. All three of them then repeatedly stabbed the victim and ransacked his apartment looking for drugs and money.[2] The second witness, not identified by name in the record, testified that he had been asked by Ms. Metz to participate in the murder but declined. This witness also testified that he came to the apartment later that day, and Ms. Metz "showed him where they had hid the body."

Barnes, again represented by counsel, denied all the allegations and said that the unidentified witness who named him as a participant in the murder had been found not to be credible, and for that reason the murder charge had been dropped. At the conclusion of the hearing, the Board found that "the preponderance of the evidence supports the finding that [Barnes] commit-

---

1. There is no transcript of this hearing in the record. Our summary of the proceedings and the testimony is based on the handwritten notes of a Board member taken during the hearing, which is in the record as an exhibit.

2. The murder victim was stabbed fifty-one times. According to the record of Metz's testimony, "Barnes started the stabbing and Metz and Singletary joined in."

ted first degree murder and illegally used a deadly weapon." Accordingly, on August 1, 1996, the Board issued an order revoking Barnes' parole "for criminal and noncriminal violations." The criminal violations were listed as "fail[ing] to obey all laws" and "us[ing] a deadly weapon."

Thirteen months later, on September 9, 1997, Barnes filed in the Superior Court a petition for a writ of habeas corpus, asserting that he had been denied due process because the Board had admitted hearsay testimony, and that the dismissal of the murder charge established that the evidence relating to the murder was insufficient or unreliable. The Board filed a detailed response, along with fourteen exhibits, refuting Barnes' allegations. The court then denied the petition, and Barnes noted this appeal. He argues on appeal that the Board abused its discretion in revoking his parole because there was insufficient evidence that he illegally used a weapon or failed to obey all laws.

## II

■ "In order for a writ of habeas corpus to issue ... 'the facts set forth in the petition [must] make a prima facie case.' " *Bennett v. Ridley,* 633 A.2d 824, 826 (D.C.1993) (citing D.C.Code § 16–1901(a) (1997)). When a habeas corpus petition challenges a revocation of parole, however, the court does not review the merits of the Board's decision to revoke, but is "limited to a review of the procedures used by the Board in reaching its decision." *Smith v. Quick,* 680 A.2d 396, 398 (D.C.1996) (citing *Bennett,* 633 A.2d at 826); *accord, Brown–Bey v. Hyman,* 649 A.2d 8, 9 (D.C.1994); *In re Tate,* 63 F.Supp. 961, 962 (D.D.C.) (court may consider only "whether the petitioner has been deprived of his legal rights by the manner in which the revocation hearing was conducted"), *aff'd sub nom. Fleming v. Tate,* 81 U.S.App.D.C. 205, 156 F.2d 848 (1946).

■ In this case, Barnes admitted violating two conditions of his parole by failing to present himself for drug testing and failing to report to his parole officer. Because of these violations, the Board convened a parole revocation hearing in May 1996. There is no dispute that the Board gave Barnes notice of that hearing, advised him of his rights, and provided him with counsel. There is nothing in the record to suggest that Barnes was deprived of his legal rights by the manner in which that hearing was conducted. Moreover, his failure to comply with the original release terms would have been sufficient in itself, under established regulations, to justify the revocation of his parole. *See* 28 DCMR § 219.6(e) (1987). The Board, however, decided to postpone its revocation decision so that it could also consider any instances of misconduct related to the intervening murder charge.

At the second hearing in July, Barnes was again provided with notice of the hearing and informed of his rights. In addition, he was represented by counsel who, as far as we can tell from the record, participated fully in the proceedings. The Board found, again by a preponderance of the evidence, that Barnes had violated parole by using an illegal weapon. There was no error in this ruling. Even though the murder charge against Barnes was dropped, it was permissible for the Board to consider, as it did, the facts underlying that charge. *See Wright v. United States,* 262 A.2d 350, 352 (D.C.1970) (in proceedings for revocation of probation or parole, when the defendant has been rearrested and charged with an additional offense, "considerations of dangerousness are appropriately taken into account"); *Maddox v. United States Parole Commission,* 821 F.2d 997, 999 (5th Cir.1987) (Commission may consider uncharged criminal activity in revoking parole); *Arias v. United States Parole Commission,* 648 F.2d 196, 200 (3d Cir.1981) (upholding revocation based in part on pre-sentence report stating facts relating to dismissed indictment); *Schuemann v. Colorado State Board of*

*Adult Parole,* 624 F.2d 172, 174 (10th Cir. 1980) (revocation may be based on new criminal act even if conviction of that crime is reversed on appeal, so long as reversal "was not based on a finding of innocence"); *United States v. Gardiner,* 666 F.Supp. 267, 270–271 (D.Me.1987) (Commission may consider "unadjudicated alleged criminal conduct" as basis for revoking parole).

Barnes' argument is an attack on the merits of the Board's decision, which is not subject to judicial review. *Smith v. Quick,* 680 A.2d at 398; *Bennett,* 633 A.2d at 826. Because he has failed to show that he was deprived of his legal rights by the manner in which the revocation hearing was conducted, the denial of his habeas corpus petition is

*Affirmed.*