**Edward MADDOX, Appellee,**

v.

**Michelle ELZIE, et al., Appellants.**

No. 00–3018.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 6, 2000.

Decided Jan. 12, 2001.

Mary L. Wilson, Assistant Corporation Counsel, argued the cause for appellant. With her on the briefs were Robert Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel.

Valinda Jones, Assistant U.S. Attorney, argued the cause for amicus curiae The United States of America. With her on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Thomas J. Tourish, Jr. and Ronald Dixon, Assistant U.S. Attorneys.

Mary Manning Petras, appointed by the court, argued the cause and filed the brief for appellee.

Before: ROGERS and GARLAND, Circuit Judges and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

Michelle Elzie [1] and the District of Columbia Board of Parole (collectively "the Board") appeal the order granting, in part, Edward Maddox's petition for a writ of habeas corpus. The Board contends as a threshold matter that the district court erred in not requiring Maddox to exhaust his habeas corpus remedies in the District of Columbia courts before allowing him to challenge, under 28 U.S.C. § 2241 (1994), his service of a sentence imposed by the Superior Court of the District of Columbia. On the merits, the Board contends that the district court erred in partially granting the writ because Maddox failed to show that the manner in which the Board conducted his parole revocation hearing resulted in any prejudicial violation of his due process rights. We reverse the district court's order on the merits without deciding the exhaustion issue.

## I.

The United States Attorney prosecuted Maddox three times in the United States district court in connection with his April 9, 1996, arrest. The first trial resulted in a mistrial; Maddox was convicted at the second trial, but his conviction was reversed because of prosecutorial misconduct during closing argument, *see United States v. Maddox,* 156 F.3d 1280 (D.C.Cir.1998) (*"Maddox I"*); the jury found him not guilty at the third trial.[2] After the reversal of Maddox's second conviction, the Board lodged a parole violation warrant for Maddox's prior D.C. Superior Court sentence; Maddox therefore remained in custody following his acquittal.[3] The Board thereafter revoked his parole, and Maddox filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (1994).[4] In seeking rein-

---

1. Appellant Michelle Elzie is the warden of the District of Columbia's Central Detention Facility.

2. The charges stemmed from Maddox's arrest on April 9, 1996, when a police officer, after retrieving a rental car key that Maddox had dropped upon seeing the police approach him, found a handgun and PCP under the driver's seat of the rental car. *See Maddox v. Elize,* 83 F.Supp.2d 113, 115 (D.D.C.1999) (*"Maddox II"*). The grand jury returned a four-count indictment; one count was dismissed. At his first trial, Maddox was tried for one count of possession of PCP with intent to distribute, *see* 21 U.S.C. §§ 841(a)(1) (1994), 841(b)(1)(D) (Supp. IV 1998), and one count of carrying and using a firearm during a drug trafficking offense. *See* 18 U.S.C. § 924(c)(1) (Supp. IV 1998). At his second trial, Maddox was tried for one count of possession of a

firearm by a convicted felon, *see id.* § 922(g)(1). This count had been severed from the other counts against Maddox prior to his first trial. At his third trial, Maddox was retried on the single count of possession of a firearm by a convicted felon.

3. In 1981, Maddox was sentenced to 26 years imprisonment by the D.C. Superior Court for armed robbery, assault with intent to commit robbery while armed, and carrying a dangerous weapon. He was paroled in November 1991 and released on January 27, 1992.

4. Section 2241 provides, in relevant part:

The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . .

28 U.S.C. § 2241(c)(3) (1994).

statement of his parole, Maddox argued that the trial prosecutor's appearance at the revocation hearing was in retaliation for Maddox's exercise of his statutory right to appeal and his constitutional right to a jury trial, and thus violated his right to due process. Under the circumstances, he argued that the court must presume vindictiveness, and alternatively, that there was actual vindictiveness. *See Maddox v. Elize,* 83 F.Supp.2d 113, 120 (D.D.C.1999) (*"Maddox II"*). In addition, he argued that the trial prosecutor's *ex parte* meeting with the Board violated his due process rights to confront and to cross-examine witnesses.

Following a hearing, the district court granted the writ in part. The district court found that Maddox had been denied his constitutional rights to due process, specifically his right to confront adverse witnesses and his right to be present at every stage of the revocation proceeding. *See id.* at 121. In addition, because the trial prosecutor appeared not only as a witness, but presented evidence and argument and cross-examined witnesses, the district court ruled that inasmuch as the trial prosecutor had no legal right to participate in the revocation hearing, his "excessive" conduct constituted actual prosecutorial vindictiveness. *Id.* at 121–23. The district court ordered that a new revocation hearing be held in accordance with certain conditions, and continued Maddox's detention while retaining jurisdiction of the case.[5] *Id.* at 124–25. The Board's motion to alter or amend the judgment under FED. R.CIV.P. 59(e) was denied.[6]

## II.

As a threshold matter, the Board contends that the district court should have required Maddox to exhaust his habeas corpus remedies in the District of Columbia courts because he was challenging his reincarceration on a sentence imposed by the D.C. Superior Court. Although the Board acknowledged that under *Blair-Bey v. Quick,* 151 F.3d 1036 (D.C.Cir.1998), a D.C. prisoner may challenge his parole revocation in federal court by means of a habeas petition under 28 U.S.C. § 2241 (1994), the Board maintains that a D.C. prisoner, "like any other state prisoner," must first exhaust his local habeas corpus remedies in the District of Columbia courts. *See, e.g., Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (and cases cited). The Board relies for its exhaustion argument on the long-established principle that federal courts should not interfere with a State conviction or with the service of a State sentence until the State courts address any errors.

We are not unsympathetic to the Board's view that requiring a D.C. prisoner to exhaust his habeas remedies under District of Columbia law before filing a petition under 28 U.S.C. § 2241 follows logically from the establishment of a State-type court system for the District of Columbia. *See* District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 473 (1970) ("Court Reform Act"). After the expansion of the federal courts' habeas

---

**5.** The district court ordered (1) that the record of the first hearing be expunged; (2) that the new hearing be recorded, take place before a new Board, and involve no *ex parte* contacts; and (3) that Maddox be given credit against his D.C. sentence for the time he was incarcerated on the federal charges. *See Maddox II,* 83 F.Supp.2d at 122–24. Prior to oral argument of this appeal, the District of Columbia Department of Corrections credited Maddox with time he was incarcerated prior to trial on the federal charges. *See* October 3, 2000 Letter to Mark J. Langer, Clerk of the Court, provided pursuant to FED. R.APP. P. 28(j).

**6.** A successor district court assigned to handle the case upon the retirement of the habeas judge denied the motion on the ground that it was "an invitation for one district judge to hear an appeal from another." In view of our disposition, we do not reach the Board's contention that, under *Langevine v. District of Columbia,* 106 F.3d 1018 (D.C.Cir.1997), the denial was an abuse of discretion.

corpus jurisdiction to include cases in which State prisoners are held in violation of the United States Constitution, the Supreme Court recognized that federal courts had the power to grant relief to State prisoners and that, as a consequence, there was a potential for conflict between federal and State courts. *See Irvin v. Dowd,* 359 U.S. 394, 404–05, 79 S.Ct. 825, 3 L.Ed.2d 900 (1959). The potential for such conflict necessitated, in the Court's view, exhaustion of State remedies before the federal courts intervened. The Court explained:

> [t]he principles are now reasonably clear. Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state court and in [the Supreme] Court by appeal or writ of certiorari have been exhausted.

*Id.* at 405, 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (quoting *Ex parte Hawk,* 321 U.S. 114, 116–17, 64 S.Ct. 448, 88 L.Ed. 572 (1944)).[7] Congress codified the exhaustion doctrine in 28 U.S.C. § 2254 (1994 & Supp. IV 1998).[8] *See Irvin,* 359 U.S. at 405, 79 S.Ct. 825.

The Board contends that for the reasons noted in *Irvin v. Dowd* the exhaustion doctrine embodied in § 2254 should apply to D.C. prisoners. To overcome the fact that the District of Columbia is not a State, the Board points out that § 2254 was enacted before the District of Columbia had an independent court system equivalent to a State system and at a time when most criminal prosecutions for violation of District of Columbia law had to be filed in the federal courts. *See Palmore v. United States,* 411 U.S. 389, 392 n. 2, 408–09, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); *Thompson v. United States,* 548 F.2d 1031, 1033–34 (D.C.Cir.1976). Once Congress established a separate State-type court system for the District of Columbia with its own habeas corpus remedies, *see* D.C.Code §§ 16–1901, 23–110 (1981),[9] the Board

---

**7.** The Supreme Court allowed an exception "in cases of peculiar urgency," *Tinsley v. Anderson,* 171 U.S. 101, 105, 18 S.Ct. 805, 43 L.Ed. 91 (1898), such as when the petitioner is needed to testify in federal court; or is in State custody for an act done or omitted pursuant to federal law; or is a foreign national in State custody for an act done or omitted pursuant to the authority of the foreign state and, therefore, international law and the federal government's unique interest in foreign relations are implicated. *See Ex parte Royall,* 117 U.S. 241, 251–52, 6 S.Ct. 734, 29 L.Ed. 868 (1886).

**8.** Section 2254 provides, in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant.... An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b)(1), (c) (Supp. IV 1998).

**9.** Section 16–1901(a) provides, in relevant part:

A person committed, detained, confined, or restrained from his lawful liberty within the District [of Columbia] ... may apply by petition to the appropriate court, or a judge thereof, for a writ of habeas corpus, to the end that the cause of the commitment, detainer, confinement, or restraint may be inquired into.

D.C.Code § 16–1901(a) (1981).

Section 23–110 provides, in relevant part:

A prisoner in custody under sentence of the Superior Court [of the District of Columbia] claiming the right to be released upon the ground that (1) the sentence was imposed in violation of the Constitution of the United States or the laws of the District of Columbia, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, (4) the sentence is otherwise subject to collateral attack, may move the court to vacate, set aside, or correct the sentence.... An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section shall not be enter-

maintains there is no reason not to treat D.C. prisoners like State prisoners and require D.C. prisoners to exhaust their District of Columbia law remedies. Maddox responds that, in view of the statement by the court in *Blair-Bey*, 151 F.3d at 1044, that District of Columbia and federal remedies are equally available to D.C. prisoners, he was not required to exhaust his remedies under District of Columbia law before filing a petition under § 2241.

The court was not confronted in *Blair-Bey* with an exhaustion issue because the defendant in that case had, in fact, exhausted his remedies under District of Columbia law. *See id.* at 1038. Consequently, the court had no occasion to address the exhaustion contention that the Board now presents. Congress did not specifically address the question in the Court Reform Act, and the question whether a D.C. prisoner should be treated as a State prisoner for purposes of § 2254 is an open question in this circuit. The court has addressed the question of whether the District of Columbia is to be treated as a State in connection with a § 2241 habeas petition attacking a D.C. conviction and sentence. In *Garris v. Lindsay*, 794 F.2d 722 (D.C.Cir.1986), the court applied the appeal requirements of 28 U.S.C. § 2253(c)(1) (Supp. IV 1998) [10] by treating a D.C. Superior Court conviction and sentence as "detention ...

aris[ing] out of process issued by a State court."[11] *Id.* at 724 (interpreting an earlier version of 28 U.S.C. § 2253). Whatever the logical import of *Garris* may be for purposes of the Board's exhaustion contention, the court need not resolve this question today because the district court erred in ruling that Maddox was denied due process at his parole revocation hearing. *Cf. Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir.2000); *see also* 28 U.S.C. § 2254(b)(2)(Supp. IV 1998).[12]

## III.

The Board contends that the district court erred in granting Maddox partial habeas corpus relief on the ground that he was denied due process at his parole revocation hearing. Essentially, the Board maintains that Maddox failed to show any prejudicial constitutional error because his acquittal after trial did not preclude the Board from revoking parole, if appropriate, following a hearing. Joined by the United States as amicus curiae, the Board maintains that a review of the revocation hearing, including the trial prosecutor's conduct, demonstrates that Maddox had a full and fair hearing under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), that the trial prosecutor's participation did not amount to actual vindictiveness in violation of Maddox's con-

tained by the Superior Court or by any Federal or State court if it appears that the applicant has failed to make a motion for relief under this section or that the Superior Court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

D.C.Code § 23–110(a), (g) (1981).

10. Section 2253(c)(1) provides:

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court or the final order in a proceeding under [28 U.S.C.§] 2255.

28 U.S.C. § 2253(c)(1) (Supp. IV 1998); *see also* FED. R.APP. P. 22(b).

11. In *Garris*, the court concluded that the petitioner was not entitled to a certificate of appealability under § 2253 because he had not met the requirements of D.C.Code § 23–110(g) (1981), *see supra* n. 9, and, therefore, the federal courts lacked jurisdiction over his petition. *See Garris*, 794 F.2d at 727. *See also Swain v. Pressley*, 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977).

12. Section 2254(b)(2) provides:

An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(b)(2)(Supp. IV 1998).

stitutional rights, and that a presumption of vindictiveness is unwarranted. We first address the trial prosecutor's *ex parte* meeting with the Board and then turn to the trial prosecutor's conduct during the revocation hearing.

### A.

█ In *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court set forth the oft-repeated minimal due process requirements to which a parolee is entitled when a state attempts to revoke parole.[13] The Court cautioned in *Morrissey*, however, that "there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484. Similarly, in *Gagnon v. Scarpelli*, 411 U.S. 778, 789, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Supreme Court explained that "[i]n a revocation hearing ... formal procedures and rules of evidence are not employed." The same due process standards apply to D.C. prisoners subject to parole revocation by the Board. *See Ellis v. District of Columbia*, 84 F.3d 1413 (D.C.Cir.1996); *Teachey v. Carver*, 736 A.2d 998, 1006 n. 9 (D.C. 1999).

█ Prior to the parole revocation hearing, the Board held an off-the-record meeting with the trial prosecutor, for approximately five to twelve minutes. The Board also held a similar meeting with Maddox's counsel for approximately five minutes. According to Maddox's counsel, who testified during the habeas proceeding, the Board described its procedures and inquired about counsel's theory of the case, which counsel outlined. *See Maddox II*, 83 F.Supp.2d at 119. Counsel assumed that the same thing occurred during the trial prosecutor's *ex parte* meeting with the Board. *See id.* The trial prosecutor testified that he did not recall the substance of the *ex parte* meeting, but he also did not deny the possibility that he reviewed the merits of the federal case against Maddox. *See id.* Based on the prosecutor's *ex parte* meeting with the Board prior to the hearing, the district court ruled that Maddox's right to confront witnesses and his right to be present had been violated. *See id.* at 121.

The United States concedes that *ex parte* contacts create the appearance of impropriety and that such contacts should be avoided. *See* Amicus Brief at 28 n.17. The Board, in apparent agreement, does not challenge the district court's conclusion that the *ex parte* meeting with the trial prosecutor was inappropriate. We agree with these views, for *ex parte* meetings can create problems that exceed their value. The Supreme Court has observed that an

13. In *Morrissey*, the Court stated:

There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions [of parole], or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation.... [T]he minimum requirements of due process [include] (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

408 U.S. at 487–89, 92 S.Ct. 2593 (quotations omitted).

*ex parte* meeting between a trial judge and a juror creates a situation "pregnant with possibilities for error." *United States v. United States Gypsum Co.,* 438 U.S. 422, 460, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The same might be said of the Board's meeting with the trial prosecutor.

Nevertheless, the fact that an *ex parte* meeting occurs does not necessarily entitle a defendant to relief. *See Rushen v. Spain,* 464 U.S. 114, 117–19, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983). For example, in *United States v. Green,* 544 F.2d 138, 146 (3d Cir.1976), the Third Circuit held that a judge's *ex parte* contacts with a court-appointed expert did not violate a criminal defendant's due process rights because the *ex parte* contacts were not "clandestine" and defense counsel was afforded an opportunity to present countervailing evidence and to cross-examine the expert regarding the *ex parte* contacts. *Id.* Likewise, in *United States v. McDonald,* 933 F.2d 1519 (10th Cir.1991), the Tenth Circuit found no plain error where an *ex parte* communication occurred between a trial judge and a juror, because defense counsel was made aware of the *ex parte* communication, yet declined either to pursue the matter or to object to the communication, thus indicating that "counsel felt no prejudice existed at the time." *Id.* at 1525. So too here. Maddox fails to show that he was prejudiced in the exercise of his rights to confront witnesses and to be present as a result of the Board's *ex parte* meeting with the trial prosecutor prior to commencement of the revocation hearing. *See Sutherland v. McCall,* 709 F.2d 730, 732–33 (D.C.Cir.1983); *Standlee v. Rhay,* 557 F.2d 1303, 1307–08 (9th Cir.1977); *cf. Harris v. Day,* 649 F.2d 755, 761–62 (10th Cir.1981).

First, the record belies any contention that Maddox did not have an opportunity to present his full case to the Board in support of his claim of innocence. The Board heard testimony from Maddox's wife that on April 9, 1996, she had loaned the rental car to her nephew (since deceased), who was involved with drugs and guns. Her sister corroborated some of this testimony. A friend of Maddox's testified that he had given Maddox a ride to the street where he was subsequently stopped and arrested by the police. Maddox also proffered the trial testimony of two other defense witnesses. Finally, Maddox, who had not testified at his trials, testified that on April 9, 1996, he never touched the rental car after his wife returned it to him. While acknowledging that he had rented a number of cars over several months, for about $4000, Maddox claimed that he had several jobs and had been working for over two years at Super Fresh.

The Board found that Maddox had violated his parole in four of the six alleged violations, including PCP and gun possession. In so doing, the Board had reasonable grounds to reject Maddox's defense. His parole officer testified that from 1992 to 1996, Maddox had worked for only three weeks. Maddox then appeared to acknowledge that he had not worked at Super Fresh for two years, but for only a week between trials. Maddox claimed that his wife, who had a government GS–5 job, and his brother, who owned his own business, helped him out financially. While Maddox's counsel urged the Board not to revoke his parole in view of the weaknesses in the government's evidence regarding the events of April 9, 1996, unlike the juries in his federal trials, the Board could consider Maddox's credibility for itself.

Maddox can hardly deny that the Board had sufficient evidence to justify revocation of his parole. District of Columbia regulations do not limit the information that the Board may consider in determining whether to revoke parole. *See* D.C. Mun. Reg. tit. 28 §§ 219.1–219.12 (1987). In addition to hearing from the trial prosecutor and one of the police officers who had been involved in Maddox's arrest on April 9, 1996, the Board had other information about Maddox, including evidence of his five arrests after he was paroled. Notably, the Board had already given him

a second chance by allowing him to remain on parole after arrests in 1992 and 1993.

Second, Maddox was represented by a Federal Public Defender at the revocation hearing. His counsel was aware of the Board's *ex parte* meeting with the trial prosecutor, yet counsel neither objected to it nor otherwise indicated to the Board that the revocation hearing was tainted. To the contrary, counsel told the Board that he thought the Board would be fair in determining Maddox's fate. Counsel also did not seek to have the trial prosecutor, or the Board, place on the record what had occurred during the *ex parte* meeting. Nor did counsel seek, during the habeas proceeding, discovery regarding the *ex parte* meeting. [14] On appeal, counsel has pointed to nothing that would indicate that the trial prosecutor's *ex parte* meeting interfered with Maddox's ability to present evidence and to cross-examine witnesses or to be aware of the evidence on which the Board relied in revoking his parole.

■ To the extent that the district court relied on *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), which involved a criminal defendant's Sixth Amendment rights during trial, in ruling that Maddox's due process rights were violated, that reliance was misplaced. *See Maddox II,* 83 F.Supp.2d at 121. *Morrissey* makes clear that parole revocation is not the continuation of a criminal trial but a separate administrative proceeding at which the parolee does not possess the same rights as a criminal defendant at trial. *See Morrissey,* 408 U.S. at 480, 92 S.Ct. 2593. Conflating the distinct constitutional rights associated with the different proceedings confuses the analysis of Maddox's *ex parte* contention. Unless the parolee requests a hearing, District of Co-

lumbia regulations provide that the Board may make its revocation determination without a hearing. *See* D.C. Mun. Reg. Tit. 28 § 219.2 (1987). The Board's *ex parte* meeting with the trial prosecutor before the Board commenced the hearing was not secret. *Cf. WKAT, Inc. v. FCC,* 296 F.2d 375, 383 (D.C.Cir.1961). Maddox's counsel had an opportunity to explore the nature of the meeting at the revocation hearing. The fact that Maddox, who was represented by counsel, did not take advantage of his opportunity to question the trial prosecutor about his *ex parte* meeting with the Board is not a basis for finding a denial of due process.

**B.**

■ The district court found clear evidence of prosecutorial vindictiveness. Specifically, the district court found that the trial prosecutor "was upset about losing his case, which he blame[d] on defense counsel's successful impeachment of government witnesses, and putting on a defense case," and that the trial prosecutor "took over the Parole Board's function and prosecuted Maddox a second time," obtaining "the 'conviction' and sentence he was denied at trial" under a lowered standard of proof and relaxed evidentiary standards. *Maddox II,* 83 F.Supp.2d at 121. Viewing the trial prosecutor's conduct to have been "excessive," *id.* at 123, the district court noted that the trial prosecutor was not invited by the Board to appear as a witness. *See id.* at 121. Instead he "insinuate[d] himself into the proceeding to see that Maddox would not be freed after his acquittal" and then "took over." *Id.* In the district court's view, "[o]nce [the United States] takes on the role of prosecuting parole violation cases after a jury has ac-

14. In its Response to the Petition for a Writ of Habeas Corpus, the Board took issue with Maddox's characterization of its "alleged closed door hearing for 30 to 45 minutes" with the trial prosecutor, stating that at each *ex parte* meeting,

 *each side* was asked to discuss whether certain facts could be stipulated in order to

shorten the hearing, which was expected to be lengthy. The only reason the door was closed was because of disruption from the well-know[n] din of the jail inmates just outside the door.

Counsel did not seek to depose the Board members.

quitted the defendant, it opens itself up to the charge of vindictiveness." *Id.* at 122. The district court stated that although it had no intent to intrude on the manner in which the Board conducts its hearings, the court was concerned that "the [United States] cannot use the forum of a parole revocation hearing to retry a defendant as part of a vindictive action to jail someone the government believes to be a bad person particularly because that person has exercised his right to a jury trial." *Id.* Our review of the district court's factual finding of actual vindictiveness is for clear error, *see United States v. Meyer,* 810 F.2d 1242, 1244 (D.C.Cir.1987), although the threshold question of whether the doctrine applies in the parole revocation context is a question of law that we review *de novo. See United States v. Johnson,* 91 F.3d 695, 698 (5th Cir.1996) (and cases cited).

■■■The doctrine of prosecutorial vindictiveness developed as a corollary to the vindictiveness doctrine that precludes, as a matter of due process, imposition by a judge of a more severe sentence upon retrial after a defendant has successfully exercised a constitutional right or pursued a statutory right of appeal or collateral attack. *See North Carolina v. Pearce,* 395 U.S. 711, 723–26, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In the prosecutorial context, the doctrine precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution. *See Blackledge v. Perry,* 417 U.S. 21, 27–29, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *United States v. Meyer,* 810 F.2d 1242 (D.C.Cir.1987); *United States v. Jamison,* 505 F.2d 407 (D.C.Cir.1974). To prove actual vindictiveness requires "objective evidence" that the prosecutor's actions were designed to punish a defendant for asserting his legal rights. *See Meyer,* 810 F.2d at 1245 (citing *United States v. Goodwin,* 457 U.S. 368, 380–81, 384 & n. 19, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). Such a showing is normally "exceedingly difficult to make." *Id.* Because the underly-

ing concern is not whether a prosecutor has acted maliciously or in bad faith, *see Blackledge,* 417 U.S. at 28, 94 S.Ct. 2098, but whether "the fear of [prosecutorial] vindictiveness may unconstitutionally deter a defendant's exercise of [a constitutional or statutory right]," *id.* (quotation omitted), a presumption of vindictiveness may be warranted "in cases in which a reasonable likelihood of vindictiveness exists," *Goodwin,* 457 U.S. at 373, 102 S.Ct. 2485; *see also Alabama v. Smith,* 490 U.S. 794, 799–800, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The government may overcome the presumption with "objective information in the record justifying the increased sentence [or charges]." *Goodwin,* 457 U.S. at 374, 102 S.Ct. 2485. "If the government produces such evidence, the [criminal] defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred." *Meyer,* 810 F.2d at 1245.

■■ Amicus the United States contends‧ that the district court had no basis for finding actual vindictiveness. First, a trial prosecutor does not wield unilateral power over the decision to be made by an independent adjudicative body. The Board, not the United States, is responsible for the revocation decision, and Maddox has never contended that the Board was simply the trial prosecutor's tool. *Cf. United States v. Liddy,* 542 F.2d 76, 79 (D.C.Cir.1976). Second, a parole board is not being asked at a revocation hearing " 'to do over what it thought it had already done correctly,' " *Goodwin,* 457 U.S. at 383, 102 S.Ct. 2485, 73 L.Ed.2d 74 (quoting *Colten v. Commonwealth of Kentucky,* 407 U.S. 104, 117, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972)), but rather to make an entirely new decision based on an altered factual record. There is nothing in the record indicating that the Board had a " 'personal stake' " in Maddox's earlier trials such that it might engage in " 'self-vindication' " by revoking his parole. *Goodwin,* 457 U.S. at 383, 102 S.Ct. 2485 (quoting *Chaffin v. Stynchcombe,* 412 U.S. 17, 27, 93 S.Ct. 1977, 36

L.Ed.2d 714 (1973)). Nor is there evidence of an institutional bias that would prompt the Board to treat a parolee who has been acquitted more severely than a parolee who has not been acquitted. Unlike a trial judge or prosecutor, the Board is not constrained by doctrines such as stare decisis, res judicata, the law of the case, or the prohibition on double jeopardy. *See Goodwin*, 457 U.S. at 376–77, 102 S.Ct. 2485. Third, a parolee can never be made worse off by exercising a protected right because if the parolee is acquitted, the acquittal weighs in favor of the parolee during the revocation proceedings. Finally, the United States asserts, the government may relitigate acquitted conduct in a later proceeding, even to the extent of instituting new charges for the same conduct, without giving rise to a presumption of vindictiveness.

We agree with the United States that the district court extended the doctrine of prosecutorial vindictiveness beyond its moorings. The trial prosecutor did not initiate the revocation hearing; rather, the Board filed a parole violator warrant after the court reversed Maddox's conviction at his second trial. The Board is an independent decision maker. *See* D.C.Code § 24–201.2(a)(4) (1981); *Barnes v. District of Columbia Board of Parole*, 759 A.2d 1073, 1075–76 (D.C.2000) (and cases cited); *cf. United States v. Watts*, 519 U.S. 148, 155–57, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). It is unrestrained by doctrines that bind courts and prosecutors, and its reputation for effectively carrying out its responsibilities hardly turns on whether a parolee exercises his right to go to trial. The Board, not the trial prosecutor, made the decision to revoke Maddox's parole, and that decision is distinct from the concern

about "upping the ante" that underlies the prosecutorial vindictiveness doctrine. *Cf. Meyer*, 810 F.2d at 1246 (citing *Goodwin*, 457 U.S. at 381, 102 S.Ct. 2485). In addition, an acquittal would appear only to help, not harm, a defendant in urging the Board that his parole should not be revoked. Moreover, any personal pique of the trial prosecutor about losing his case at trial or a prosecutor's "testy" attitude at trial are irrelevant to the existence of prosecutorial vindictiveness. *Cf. United States v. Esposito*, 968 F.2d 300, 305 (3rd Cir. 1992).[15] Although the district court was troubled by what it concluded was the government's "lack of a basic sense of decency and fairness," *Maddox II*, 83 F.Supp.2d at 122, in proceeding against Maddox in a different forum upon losing its case after putting Maddox on trial three times, resulting in his incarceration for over three years for a crime of which a jury acquitted him, *see id.*, such deficiencies are relevant to judgment but do not necessarily demonstrate vindictiveness.

■ Even were we to assume that something akin to prosecutorial vindictiveness applies in the parole revocation context, and also to assume that the trial prosecutor's actions are troubling to the extent that he was more than a witness, *cf. Gagnon*, 411 U.S. at 789, 93 S.Ct. 1756, the record does not support a finding that the trial prosecutor's conduct violated Maddox's due process rights. As the district court observed, a trial prosecutor with "intimate knowledge of the evidence" could, as a witness, provide helpful assistance to the Board. *Maddox II*, 83 F.Supp.2d at 122. In that sense, there is no legal bar to the trial prosecutor's involvement in parole revocation hearings.[16] Nor do we read 28

15. *Esposito*, 968 F.2d at 305, involved a presumption of vindictiveness. Maddox suggests no basis for concluding that its reasoning for declining to apply the presumption where a prosecutor acts for legitimate reasons is inapplicable to a finding of actual vindictiveness.

16. The United States acknowledged during the habeas proceeding that the trial prosecutor appeared at the revocation hearing in his official capacity as a representative of the United States. *See Maddox II*, 83 F.Supp.2d at 119. It also did not challenge the district court's assumption that the trial prosecutor "did not act alone ... [inasmuch as] his actions were approved by three superiors in the United States Attorney's office." *Id.* at 122 & n. 9.

U.S.C. § 547 (1994) to be a bar.[17] *See generally Gagnon,* 411 U.S. at 787, 93 S.Ct. 1756. Albeit in a different context, the court has acknowledged that the United States Attorney "is vested with broad discretion to protect the public from crime, such discretion being derived both from statutory grant and the authority of the Attorney General at common law." *Fay v. Miller,* 183 F.2d 986, 988 (D.C.Cir.1950) (interpreting the predecessor to 28 U.S.C. § 547); *cf. Johnson v. Kegans,* 870 F.2d 992, 997–98 (5th Cir.1989). The appearance of the trial prosecutor to assist the Board is consistent with this obligation.

Further, the record does not support the district court's finding that the trial prosecutor took over the revocation proceeding. *See Maddox II,* 83 F.Supp.2d at 119–21. While the trial prosecutor's involvement in the revocation proceedings exceeded that of a witness, the record shows that the Board remained in control. Board members questioned the witnesses and attorneys, recalled witnesses, determined whether or how witnesses would be cross-examined, asserted exclusive authority over relevance and credibility determinations, and controlled the length of arguments. Maddox does not allege, nor do we find evidence, that the trial prosecutor's involvement in the revocation proceedings impaired the ability of the Board to make an independent revocation decision. Whether the Board wished to have the trial prosecutor's assistance was a matter within the Board's discretion, and provision of that assistance does not show actual vindictiveness.

■ Because no "reasonable likelihood of vindictiveness exists" *Goodwin,* 457 U.S. at 373, 102 S.Ct. 2485, there is no basis for a presumption of vindictiveness. Maddox's criminal prosecution had ended before the allegedly vindictive actions took place. As the Third Circuit explained in *United States v. Esposito,* 968 F.2d 300 (3rd Cir. 1992), no presumption of prosecutorial vindictiveness exists when, after being acquitted of charges under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (1994 & Supp. IV 1998), where certain drug offenses were the predicate acts, the defendant was subsequently charged with the same drug offenses in a second indictment, for:

> [t]he evil that a presumption of vindictiveness seeks to eradicate is the threat of retaliation when an accused exercises a right in the course of the prosecution. Where, however, the prosecutor has done nothing to deter the exercise of one's right during the case or proceeding, and the prosecution has come to a natural end, no presumption of vindictiveness applies.

968 F.2d at 303–04. This reasoning applies with equal force to Maddox's situation: he exercised his rights to appeal and to a jury trial and his criminal prosecution ended in acquittal before the trial prosecutor appeared at his parole revocation hearing. *Cf. United States v. Johnson,* 171 F.3d 139 (2nd Cir.1999); *United States v. Rodgers,* 18 F.3d 1425, 1429–31 (8th Cir.1994); *United States v. Wall,* 37 F.3d 1443, 1447–50 (10th Cir.1994).

■ Even assuming, as Maddox alleges, that the trial prosecutor acted in retaliation for Maddox's exercise of his rights to appeal and to a jury trial, and that a presumption of vindictiveness would be appropriate, the prosecutor's stated purpose for participating in the revocation hearing rebuts the presumption. At the habeas proceeding, the trial prosecutor explained that he went to the revocation hearing because he wanted to be sure that the Board had a balanced view of the charges against Maddox, and because he considered Maddox to be a danger to the com-

---

**17.** Section 547(1) provides, that "[e]xcept as otherwise provided by law, each United States attorney ... shall prosecute for all offenses against the United States." 28 U.S.C. § 547(1) (1994). Section 547(2) provides

"[e]xcept as otherwise provided by law, each United States attorney ... shall prosecute or defend, for the Government, all civil actions, suits or proceedings in which the United States is concerned." *Id.* § 547(2).

munity, describing his role as assisting the Board. [18] See *Maddox II*, 83 F.Supp.2d at 119. While the district court disagreed with the trial prosecutor's assessment of the strength of the government's evidence against Maddox, concluding that the evidence was solely circumstantial and lacked credibility in view of the misstatements by the police officers at trial, *see id.* at 120–21, the trial prosecutor's evaluation of the evidence is distinct from a vindictive motive. Contrary to the district court's finding that "[i]f Maddox were a danger to society, then the Parole Board should have taken action during the five months subsequent to Maddox's release after his first trial," *id.* at 121, there is no evidence that the Board was aware of Maddox's release on bond after the first trial. Consequently, the Board's failure to issue a parole violator warrant at that time does not undermine the trial prosecutor's view that Maddox was a danger to the community. The fact that the trial prosecutor defined "assistance" more broadly than the district court is not dispositive because the Board did not relinquish its authority over the proceedings. For these reasons, Maddox fails to show that the trial prosecutor's stated reasons for attending the revocation hearing were pretextual.

Accordingly, because the district court erred in ruling that the Board's *ex parte* meeting with the trial prosecutor infringed Maddox's due process rights, and in finding that the trial prosecutor's conduct at the revocation hearing constituted actual vindictiveness, and because there is no basis for a presumption of vindictiveness, we reverse the order partially granting Maddox's habeas corpus petition.

---

18. The trial prosecutor acknowledged that he had never previously appeared at a parole revocation hearing even though he had been a prosecutor for nearly twenty-two years. *See* *Maddox II*, 83 F.Supp.2d at 119. He advised the Board that he " 'was a parole officer at one point.' " *Id.* at 117.