**UNITED STATES OF AMERICA,**
Appellee,

v.

**Blen A. GARY, Appellant.**

**No. 01–3086.**

United States Court of Appeals,
District of Columbia Circuit.

Decided May 24, 2002.

Richard Seligman, appointed by the court, was on the briefs for appellant.

Roscoe C. Howard, Jr., U.S. Attorney, Susan A. Nellor, John R. Fisher, and Roy W. McLeese III, Assistant U.S. Attorneys, were on the brief for appellee.

Before: EDWARDS and RANDOLPH, Circuit Judges, and WILLIAMS, Senior Circuit Judge. (The decision in this matter was reached upon consideration of the record and the parties' briefs, but without oral argument, pursuant to D.C. Circuit Rule 34(j).)

Opinion for the Court filed by Circuit Judge EDWARDS.

EDWARDS, Circuit Judge:

Appellant Blen Gary pled guilty to one count of bank fraud in violation of 13 U.S.C. § 1344, conditioned on her right to appeal the District Court's denial of her motion to dismiss the indictment against her. On appeal, Gary claims that the District Court erred in denying her motion to dismiss, because the underlying indictment was obtained in violation of a plea agreement in another case and the Government was guilty of prosecutorial vindictiveness.

Gary also claims that the District Court erred in calculating her sentence. Finding no merit in these claims, we affirm the judgment of the District Court.

## I. BACKGROUND

In August 1993, through a fraudulent deed application, Gary obtained a conveyance of real estate property owned by a woman who lived in the property on Jefferson Street, Washington, D.C. ("the Jefferson Street property"). After obtaining this property, Gary submitted a fraudulent loan application to the Health, Education and Welfare Federal Credit Union and obtained a $60,000 line of credit secured by the Jefferson Street property. In June 1995, Gary extended the line of credit to $96,000, again submitting an application with fraudulent representations. Gary withdrew funds from the line of credit until May 1996. *See* Indictment, *United States v. Gary*, Crim. No. 99-189 (D.D.C. June 3, 1999), *reprinted in* Appendix to Br. for Blen Gary ("App.") Ex. 9.

Subsequently, in August 1996, Gary and Josephine Jenkins, a co-conspirator, used a forged signature to obtain the conveyance of a home owned by another woman on 21st Street ("the 21st Street property"). The property was purportedly conveyed to Jenkins. Gary and Jenkins then submitted loan applications with fraudulent representations, obtained mortgage loans, and took funds in excess of $50,000 on the collateral of the 21st Street property. *See* Tr. of Plea Hr'g at 7-11 (July 28, 1997), *reprinted in* App. Ex. 5.

In April 1997, a detective from the Metropolitan Police Department questioned Gary about her dealings in connection with the 21st Street property. *See* Tr. of Mots. Hr'g at 6 (Sept. 21, 1999), *reprinted in* App. Ex. 10. On May 20, 1997, the United States Attorney notified Gary that she "may have violated" the wire fraud statute

and offered her "an opportunity to discuss this matter before formal criminal charges are brought." Letter from Eric H. Holder, United States Attorney, to Blen Gary (May 20, 1997), *reprinted in* App. Ex. 1.

Meanwhile, on May 15 and 27, 1997, an FBI agent interviewed Gary about the Jefferson Street property. The agent then sought a subpoena on June 25, 1997. *See* Tr. of Mots. Hr'g at 6, 38-39 (Sept. 21, 1999), *reprinted in* App. Ex. 10. The subpoena included a form documenting the May 15 meeting between Gary and the FBI agent. The U.S. Attorney working on the 21st Street property case saw the subpoena request, so she was aware that Gary was the subject of a second criminal investigation in connection with the Jefferson Street property. However, the U.S. Attorney did not notify Gary's attorney until September 9, 1997, that Gary was under investigation in a second case. *Id.* at 41.

On June 18, in a plea agreement offer, the Government set forth a detailed description of the forged deed transfer, loan applications, and receipt of funds from the loans relating to the 21st Street property. *See* Letter from Eric H. Holder, United States Attorney, to L. Barrett Boss, counsel for Blen Gary, and Cheryl D. Stein (June 18, 1997), *reprinted in* App. Ex. 2. After plea negotiations, Gary agreed to plead guilty to a D.C.Code offense. The Government then sent a letter outlining the agreement. *See* Letter from Eric H. Holder, United States Attorney, to L. Barrett Boss, counsel for Blen Gary (June 23, 1997), *reprinted in* Record Material for Appellee ("R.M.") tab A. This letter included a promise by the Government that "the United States will not bring any additional criminal charges against Ms. Gary . . . for offenses outlined in the Information and which were committed before the date of this agreement." *Id.* On July 9, 1997, the Government filed an Information

with the District Court that described the scheme of fraudulently obtaining loans secured by the 21st Street property. *See* Information, *United States v. Gary*, Crim. No. 97-280 (July 9, 1997), *reprinted in* App. Ex. 4. On July 25, 1997, the Government filed a more detailed, written factual proffer with the District Court relating solely to the 21st Street property. *See* Letter from Mary Lou Leary, United States Attorney, to the Honorable James Robertson, United States District Judge (July 25, 1997), *reprinted in* R.M. tab B. Gary pled guilty at a plea hearing on July 28, 1997.

At sentencing on the 21st Street property scheme, the Government sought to enhance Gary's sentence by introducing the Jefferson Street property case. The District Court disallowed the enhancement absent a commitment by the Government to forgo any subsequent criminal charges against Gary in connection with the Jefferson Street property. *See* Tr. of Sentencing Hr'g at 7-8 (Oct. 24, 1997), *reprinted in* App. Ex. 6. The Government was unwilling to make such a pledge, deciding instead to present the case to the grand jury for indictment. *See* Tr. of Sentencing Hr'g at 2 (Nov. 5, 1997), *reprinted in* App. Ex. 8. The District Court sentenced Gary to six to 18 months in prison. *Id.* at 14. Gary served three months in prison and six months in a halfway house, and then was released from parole on April 4, 1999.

On October 28, 1997, the Government sent Gary a plea offer relating to the Jefferson Street property. This offer did not refer to the 21st Street property or the criminal charges related to that property. *See* Letter from Eric H. Holder, United States Attorney, to L. Barrett Boss, counsel for Blen Gary (Oct. 28, 1997), *reprinted in* App. Ex. 7. Gary rejected the offer. On June 3, 1999, less than a month after Gary was released from parole, the Gov-

ernment obtained an indictment for one count of bank fraud in violation of 13 U.S.C. § 1344 for conduct relating to loans obtained using the Jefferson Street property as security. *See* Indictment, *United States v. Gary*, Crim. No. 99-189 (D.D.C. June 3, 1999), *reprinted in* App. Ex. 9.

Gary filed a motion to dismiss the Indictment, claiming that the Indictment breached the plea agreement in the 21st Street property case, the Indictment was vindictive, and that the delay between the alleged criminal conduct from 1993 to 1995 and the prosecution in 1999 violated her Fifth Amendment right to due process. The District Court denied the motion on all counts. *See* Tr. of Mots. Hr'g at 70-81 (Sept. 21, 1999), *reprinted in* App. Ex. 10.

Gary pled guilty, conditioned on her right to appeal the District Court's denial of the motion to dismiss. At sentencing, the District Court enhanced Gary's total offense level by two levels under § 3A1.1(b)(1) of the Sentencing Guidelines, the "vulnerable victim" enhancement, and used Gary's sentence in the 21st Street property case in calculating her criminal history score. Under the Sentencing Guidelines, Gary's sentencing range was 18 to 24 months. The District Court departed downward significantly and sentenced Gary to only one month of imprisonment and five years of supervised release, of which 10 months were to be spent in a halfway house. The District Court found that the downward departure was warranted because of the "substantial and unusual burden placed upon [Gary] by successive federal prosecution stemming from simultaneous investigations by the government . . . where the government chose, for no compelling reason, to wait almost 2 years after the first charges were filed to file these charges." J. & Commitment Order at 7, *reprinted in* App. Ex. 16.

## II. ANALYSIS

In her appeal, Gary challenges the District Court's denial of her motion to dismiss the Indictment and the sentence imposed. Her challenges are meritless.

### A. *Motion to Dismiss the Indictment*

■ Gary appeals the denial of her motion to dismiss the Indictment on two of the grounds argued below. Gary first claims that the Indictment relating to the Jefferson Street property breached the plea agreement in the 21st Street property case in which the Government allegedly promised not to prosecute Gary for certain crimes. This court interprets the terms of the plea agreement *de novo, see United States v. Jones,* 58 F.3d 688, 691 (D.C.Cir. 1995); and we review the District Court's factual findings regarding alleged breaches of the plea agreement for clear error, *see United States v. Ahn,* 231 F.3d 26, 35 (D.C.Cir.2000).

Here, Gary argues that the plea agreement was ambiguous and that this ambiguity should be construed against the drafter. So interpreted, Gary contends that the plea agreement related to the 21st Street property precluded the Government's second prosecution related to the Jefferson Street property. In particular, Gary claims that the Indictment in this case involves criminal conduct of the sort that the Government promised not to prosecute pursuant to the disputed plea agreement. Gary's argument on this point is clearly wrong.

The plea agreement relating to the 21st Street property specifically limits the Government's ability to bring a new indictment only when two, independent conditions are met: first, the offense is outlined in the Information; and, second, the offense is committed before the date of the plea agreement. *See* Letter from Eric H. Holder, United States Attorney, to L. Bar-

rett Boss, counsel for Blen Gary (June 23, 1997), *reprinted in* R.M. tab A. The Information focused solely on the 21st Street property and it did not mention, or even allude to, any other property or fraudulent scheme. Neither the Jefferson Street property nor the transactions related to that property are mentioned in the Information. And Gary points to nothing to indicate that the parties evinced an intention to cover conduct relating to Jefferson Street in the 21st Street plea agreement.

Implicit in Gary's argument is the suggestion that, because prosecutors knew of the investigation relating to the Jefferson Street property when they were negotiating a plea agreement relating to the 21st Street property, the agreement *should* in fairness subsume the conduct relating to the Jefferson Street property. It may be that Gary's lawyer would have advised his client against signing the plea agreement without explicit mention of the Jefferson Street property had he known of the ongoing investigation relating to that property. This is beside the point, however. The fact is that the Government never agreed to forgo prosecution in connection with conduct related to the Jefferson Street property. Indeed, prosecutors even abandoned their request for a sentencing enhancement in the case involving the 21st Street property when the trial judge insisted on a promise that the Government would not later prosecute Gary for her alleged misdeeds in connection with the Jefferson Street property. It is therefore clear that the Government did not breach the plea agreement by bringing the Indictment related to the Jefferson Street property.

■ Gary next argues that the Government's prosecution of the Jefferson Street property case was vindictive. Gary claims in particular that the Government brought

**34**

the second indictment to penalize her for successfully preventing the Government from using the Jefferson Street property case to enhance her sentence in the 21st Street property case.

This court recently summarized the doctrine of prosecutorial vindictiveness:

> The doctrine of prosecutorial vindictiveness developed as a corollary to the vindictiveness doctrine that precludes, as a matter of due process, imposition by a judge of a more severe sentence upon retrial after a defendant has successfully exercised a constitutional right or pursued a statutory right of appeal or collateral attack. In the prosecutorial context, the doctrine precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution. To prove actual vindictiveness requires objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights. Such a showing is normally exceedingly difficult to make. Because the underlying concern is not whether a prosecutor has acted maliciously or in bad faith, but whether the fear of prosecutorial vindictiveness may unconstitutionally deter a defendant's exercise of a constitutional or statutory right, a presumption of vindictiveness may be warranted in cases in which a reasonable likelihood of vindictiveness exists. The government may overcome the presumption with objective information in the record justifying the increased sentence or charges. If the government produces such evidence, the criminal defendant's only hope is to prove that the justification is pretextual and that actual vindictiveness has occurred.

*Maddox v. Elzie*, 238 F.3d 437, 446 (D.C.Cir.2001) (quotations and citations omitted). The District Court found no evidence of actual vindictiveness. The trial judge also concluded that Gary's claims were insufficient to raise the presumption of vindictiveness. *See* Tr. of Mots. Hr'g at 73-77 (Sept. 21, 1999), *reprinted in* App. Ex. 10. This court reviews the District Court's finding regarding vindictiveness for clear error. *See Maddox*, 238 F.3d at 446.

To invoke the presumption of vindictiveness, we must find that a reasonable likelihood of vindictiveness exists – that is, that the second indictment was "more likely than not attributable to the vindictiveness on the part of" the Government. *Alabama v. Smith*, 490 U.S. 794, 801, 109 S.Ct. 2201, 2205, 104 L.Ed.2d 865 (1989). The facts of this case do not give rise to this presumption. Gary points to nothing substantial indicating a reasonable likelihood that the second indictment was brought to penalize her for challenging her sentence in the first case. The Government had every right to prosecute Gary for *both* of her fraudulent schemes. The Government's attempt to enhance Gary's sentence in the case involving the 21st Street property made it clear that the prosecutors had no intentions of allowing Gary to escape punishment for her criminal conduct related to the Jefferson Street property. When the trial judge made it clear that the Government could either seek enhancement or prosecute, but not both, the Government elected to prosecute. This was not vindictive. The mere possibility that the second indictment was vindictively motivated does not suffice – Gary must show that there is a "'realistic likelihood'" of vindictive motivation. *See United States v. Goodwin*, 457 U.S. 368, 384, 102 S.Ct. 2485, 2494, 73 L.Ed.2d 74 (1982) (quoting *Blackledge v. Perry*, 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974)). This she has not done.

What is more problematic in this case is the long delay between the dates of Gary's criminal conduct and the Government's decision to prosecute. The District Court found that this delay placed a "substantial and unusual burden" on Gary, thus warranting a significant downward departure in her sentence. *See J. & Commitment Order at 7, reprinted in App. Ex. 16.* The District Court was within its authority to adjust Gary's sentence to address this delay in prosecution. However, there is nothing to indicate that the delay was otherwise vindictive.

As noted in *Maddox*, our concerns over alleged vindictiveness do not relate to whether a prosecutor has acted maliciously or in bad faith, but whether a prosecutor's actions are designed to punish a defendant for asserting her legal rights. 238 F.3d at 446. Gary alleges that the prosecutor's *decision* to prosecute her was punishment for her objection to the Government's attempt to enhance the sentence in the case involving the 21st Street property. For the reasons that we have already indicated, this argument fails. Gary raises no plausible argument, however, that the Government *delayed* its prosecution to punish her for objecting to the proposed sentence enhancement. And even if there were some plausibility to such a contention, it does not give rise to a presumption of vindictiveness.

Finally, Gary argued below that the Indictment should be dismissed because the undue delay in prosecution violated her Fifth Amendment right to due process. She did not pursue that claim on appeal, so we have no reason to address the matter.

*B. Sentencing*

Gary challenges her sentencing on several grounds. She first claims that her criminal history score was improperly enhanced by conduct that post-dated the instant conviction by more than a year. She next contends that, assuming, *arguendo,* that the trial court correctly calculated her criminal history, it abused its discretion in failing to grant a downward departure and relied on improper bases in applying a heightened score. Finally, she argues that the trial court erred in finding that the owner of the Jefferson Street property was a "vulnerable victim" for purposes of applying a two-level sentencing enhancement. We reject these claims.

The plain text of the Guidelines precludes Gary's criminal history claims. The District Court correctly included Gary's guilty plea in the 21st Street property case in the criminal history calculation for the Jefferson Street property case. Section 4A1.2(a)(1) provides that "[t]he term 'prior sentence' means any sentence previously imposed ... for conduct not part of the instant offense." Thus, the date of the sentence, not the date of the conduct, is what is relevant. *See, e.g., United States v. Flowers,* 995 F.2d 315, 317 (1st Cir.1993) (Breyer, C.J.).

This court may set aside refusals to depart downward only in limited situations: "if the judge correctly understood the Sentencing Guidelines and the evidence, knew he could depart, and yet decided to stick to the guideline range, there has been no incorrect application of the Guidelines ... and so the resulting sentence cannot be set aside." *United States v. Sammoury,* 74 F.3d 1341, 1343 (D.C.Cir. 1996). Here, Gary argues that in light of the facts of her case, the District Court should have departed. This court's role on appeal is merely to ensure that the District Court applied the Guidelines correctly, not to second guess the District Court's exercise of discretion. *See, e.g., United States v. Greenfield,* 244 F.3d 158, 161 (D.C.Cir. 2001). Therefore, we have no basis upon

which to review the departure decision on the grounds urged by Gary.

Finally, Gary challenges the District Court's finding that the owner of the Jefferson Street property was a vulnerable victim under the Sentencing Guidelines. Gary claims that the relevant 1994 Guidelines provision limited the definition of "victim" so as to cover only the credit union that issued the loan, not the property owner who lost her property. Gary's argument rests on two premises: first, the District Court should have applied the 1994 version of the Sentencing Guidelines, and, second, under the 1994 Sentencing Guidelines, a property owner would not be considered a victim of a bank fraud. Gary further claims that the court should not apply the expanded definition of vulnerable victim added to the Guidelines in 1995, because this would infringe her protection against *ex post facto* action.

We reject Gary's argument. Sentencing courts are obliged to apply the version of the Guidelines in effect at the time of sentencing, unless doing so would violate the *ex post facto* clause. *See* 18 U.S.C. § 3553(a)(4)(A); United States Sentencing Guidelines Manual § 1B1.11(a), (b)(1) [hereinafter U.S.S.G.]. If there is an *ex post facto* problem, the sentencing court must use the version of the Guidelines in effect at the time of the charged conduct. *See* U.S.S.G. § 1B1.11(b)(1). It is not clear which version of the Guidelines the District Court applied but, regardless, these issues do not come into play in this case. Under the Sentencing Guidelines, "the last date of the offense of conviction is the controlling date for *ex post facto* purposes." U.S.S.G. § 1B1.11 cmt. n.2; *see also United States v. Karro*, 257 F.3d 112, 120 n. 2 (2d Cir.2001). The Indictment to which Gary pled guilty describes a scheme to defraud "continuing up to 1996." Indictment ¶ 4, *reprinted in* App. Ex. 9.

Because the last date of the offense of conviction is after November 1, 1995, the effective date of the 1995 amendment, *see* U.S.S.G. app. C, amend. 521, the District Court could not have applied the 1994 Guidelines. The first premise of Gary's vulnerable victim enhancement claim is faulty. Her argument therefore fails.

### III. CONCLUSION

For the foregoing reasons, the judgment of the District Court is

*Affirmed.*