United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Decided May 24, 2002

 No. 01-3086

 United States of America, 
 Appellee

 v.

 Blen A. Gary, 
 Appellant

 Appeal from the United States District Court 
 for the District of Columbia 
 (No. 99cr00189-01)

 Richard Seligman, appointed by the court, was on the 
briefs for appellant.

 Roscoe C. Howard, Jr., U.S. Attorney, Susan A. Nellor, 
John R. Fisher, and Roy W. McLeese III, Assistant U.S. 
Attorneys, were on the brief for appellee.

 Before: Edwards and Randolph, Circuit Judges, and 
Williams, Senior Circuit Judge. (The decision in this matter 
was reached upon consideration of the record and the parties' 
briefs, but without oral argument, pursuant to D.C. Circuit 
Rule 34(j).)

 Opinion for the Court filed by Circuit Judge Edwards.

 Edwards, Circuit Judge: Appellant Blen Gary pled guilty 
to one count of bank fraud in violation of 13 U.S.C. s 1344, 
conditioned on her right to appeal the District Court's denial 
of her motion to dismiss the indictment against her. On 
appeal, Gary claims that the District Court erred in denying 
her motion to dismiss, because the underlying indictment was 
obtained in violation of a plea agreement in another case and 
the Government was guilty of prosecutorial vindictiveness. 
Gary also claims that the District Court erred in calculating 
her sentence. Finding no merit in these claims, we affirm the 
judgment of the District Court.

 I. Background

 In August 1993, through a fraudulent deed application, 
Gary obtained a conveyance of real estate property owned by 
a woman who lived in the property on Jefferson Street, 
Washington, D.C. ("the Jefferson Street property"). After 
obtaining this property, Gary submitted a fraudulent loan 
application to the Health, Education and Welfare Federal 
Credit Union and obtained a $60,000 line of credit secured by 
the Jefferson Street property. In June 1995, Gary extended 
the line of credit to $96,000, again submitting an application 
with fraudulent representations. Gary withdrew funds from 
the line of credit until May 1996. See Indictment, United 
States v. Gary, Crim. No. 99-189 (D.D.C. June 3, 1999), 
reprinted in Appendix to Br. for Blen Gary ("App.") Ex. 9.

 Subsequently, in August 1996, Gary and Josephine Jenkins, 
a co-conspirator, used a forged signature to obtain the con-
veyance of a home owned by another woman on 21st Street 
("the 21st Street property"). The property was purportedly 
conveyed to Jenkins. Gary and Jenkins then submitted loan 
applications with fraudulent representations, obtained mort-

gage loans, and took funds in excess of $50,000 on the 
collateral of the 21st Street property. See Tr. of Plea Hr'g at 
7-11 (July 28, 1997), reprinted in App. Ex. 5.

 In April 1997, a detective from the Metropolitan Police 
Department questioned Gary about her dealings in connection 
with the 21st Street property. See Tr. of Mots. Hr'g at 6 
(Sept. 21, 1999), reprinted in App. Ex. 10. On May 20, 1997, 
the United States Attorney notified Gary that she "may have 
violated" the wire fraud statute and offered her "an opportu-
nity to discuss this matter before formal criminal charges are 
brought." Letter from Eric H. Holder, United States Attor-
ney, to Blen Gary (May 20, 1997), reprinted in App. Ex. 1.

 Meanwhile, on May 15 and 27, 1997, an FBI agent inter-
viewed Gary about the Jefferson Street property. The agent 
then sought a subpoena on June 25, 1997. See Tr. of Mots. 
Hr'g at 6, 38-39 (Sept. 21, 1999), reprinted in App. Ex. 10. 
The subpoena included a form documenting the May 15 
meeting between Gary and the FBI agent. The U.S. Attor-
ney working on the 21st Street property case saw the subpoe-
na request, so she was aware that Gary was the subject of a 
second criminal investigation in connection with the Jefferson 
Street property. However, the U.S. Attorney did not notify 
Gary's attorney until September 9, 1997, that Gary was under 
investigation in a second case. Id. at 41.

 On June 18, in a plea agreement offer, the Government set 
forth a detailed description of the forged deed transfer, loan 
applications, and receipt of funds from the loans relating to 
the 21st Street property. See Letter from Eric H. Holder, 
United States Attorney, to L. Barrett Boss, counsel for Blen 
Gary, and Cheryl D. Stein (June 18, 1997), reprinted in App. 
Ex. 2. After plea negotiations, Gary agreed to plead guilty to 
a D.C. Code offense. The Government then sent a letter 
outlining the agreement. See Letter from Eric H. Holder, 
United States Attorney, to L. Barrett Boss, counsel for Blen 
Gary (June 23, 1997), reprinted in Record Material for Appel-
lee ("R.M.") tab A. This letter included a promise by the 
Government that "the United States will not bring any addi-
tional criminal charges against Ms. Gary ... for offenses 

outlined in the Information and which were committed before 
the date of this agreement." Id. On July 9, 1997, the 
Government filed an Information with the District Court that 
described the scheme of fraudulently obtaining loans secured 
by the 21st Street property. See Information, United States 
v. Gary, Crim. No. 97-280 (July 9, 1997), reprinted in App. 
Ex. 4. On July 25, 1997, the Government filed a more 
detailed, written factual proffer with the District Court relat-
ing solely to the 21st Street property. See Letter from Mary 
Lou Leary, United States Attorney, to the Honorable James 
Robertson, United States District Judge (July 25, 1997), 
reprinted in R.M. tab B. Gary pled guilty at a plea hearing 
on July 28, 1997.

 At sentencing on the 21st Street property scheme, the 
Government sought to enhance Gary's sentence by introduc-
ing the Jefferson Street property case. The District Court 
disallowed the enhancement absent a commitment by the 
Government to forgo any subsequent criminal charges against 
Gary in connection with the Jefferson Street property. See 
Tr. of Sentencing Hr'g at 7-8 (Oct. 24, 1997), reprinted in 
App. Ex. 6. The Government was unwilling to make such a 
pledge, deciding instead to present the case to the grand jury 
for indictment. See Tr. of Sentencing Hr'g at 2 (Nov. 5, 
1997), reprinted in App. Ex. 8. The District Court sentenced 
Gary to six to 18 months in prison. Id. at 14. Gary served 
three months in prison and six months in a halfway house,
and then was released from parole on April 
4, 1999.

 On October 28, 1997, the Government sent Gary a plea 
offer relating to the Jefferson Street property. This offer did 
not refer to the 21st Street property or the criminal charges 
related to that property. See Letter from Eric H. Holder, 
United States Attorney, to L. Barrett Boss, counsel for Blen 
Gary (Oct. 28, 1997), reprinted in App. Ex. 7. Gary rejected 
the offer. On June 3, 1999, less than a month after Gary was 
released from parole, the Government obtained an indictment 
for one count of bank fraud in violation of 13 U.S.C. s 1344 
for conduct relating to loans obtained using the Jefferson 
Street property as security. See Indictment, United States v. 

Gary, Crim. No. 99-189 (D.D.C. June 3, 1999), reprinted in 
App. Ex. 9.

 Gary filed a motion to dismiss the Indictment, claiming that 
the Indictment breached the plea agreement in the 21st 
Street property case, the Indictment was vindictive, and that 
the delay between the alleged criminal conduct from 1993 to 
1995 and the prosecution in 1999 violated her Fifth Amend-
ment right to due process. The District Court denied the 
motion on all counts. See Tr. of Mots. Hr'g at 70-81 (Sept. 
21, 1999), reprinted in App. Ex. 10.

 Gary pled guilty, conditioned on her right to appeal the 
District Court's denial of the motion to dismiss. At sentenc-
ing, the District Court enhanced Gary's total offense level by 
two levels under s 3A1.1(b)(1) of the Sentencing Guidelines, 
the "vulnerable victim" enhancement, and used Gary's sen-
tence in the 21st Street property case in calculating her 
criminal history score. Under the Sentencing Guidelines, 
Gary's sentencing range was 18 to 24 months. The 
District Court departed downward significantly and sen-
tenced Gary to only one month of imprisonment and five 
years of supervised release, of which 10 months were to be 
spent in a halfway house. The District Court found that 
the downward departure was warranted because of the "sub-
stantial and unusual burden placed upon [Gary] by successive 
federal prosecution stemming from simultaneous investiga-
tions by the government ... where the government chose, for 
no compelling reason, to wait almost 2 years after the first 
charges were filed to file these charges." J. & Commitment 
Order at 7, reprinted in App. Ex. 16.

 II. Analysis

 In her appeal, Gary challenges the District Court's denial 
of her motion to dismiss the Indictment and the sentence 
imposed. Her challenges are meritless.

A. Motion to Dismiss the Indictment

 Gary appeals the denial of her motion to dismiss the 
Indictment on two of the grounds argued below. Gary first 
claims that the Indictment relating to the Jefferson Street 

property breached the plea agreement in the 21st Street 
property case in which the Government allegedly promised 
not to prosecute Gary for certain crimes. This court inter-
prets the terms of the plea agreement de novo, see United 
States v. Jones, 58 F.3d 688, 691 (D.C. Cir. 1995); and we 
review the District Court's factual findings regarding alleged 
breaches of the plea agreement for clear error, see United 
States v. Ahn, 231 F.3d 26, 35 (D.C. Cir. 2000).

 Here, Gary argues that the plea agreement was ambiguous 
and that this ambiguity should be construed against the 
drafter. So interpreted, Gary contends that the plea agree-
ment related to the 21st Street property precluded the Gov-
ernment's second prosecution related to the Jefferson Street 
property. In particular, Gary claims that the Indictment in 
this case involves criminal conduct of the sort that the 
Government promised not to prosecute pursuant to the dis-
puted plea agreement. Gary's argument on this point is 
clearly wrong.

 The plea agreement relating to the 21st Street property 
specifically limits the Government's ability to bring a new 
indictment only when two, independent conditions are met: 
first, the offense is outlined in the Information; and, second, 
the offense is committed before the date of the plea agree-
ment. See Letter from Eric H. Holder, United States Attor-
ney, to L. Barrett Boss, counsel for Blen Gary (June 23, 
1997), reprinted in R.M. tab A. The Information focused 
solely on the 21st Street property and it did not mention, or 
even allude to, any other property or fraudulent scheme. 
Neither the Jefferson Street property nor the transactions 
related to that property are mentioned in the Information. 
And Gary points to nothing to indicate that the parties 
evinced an intention to cover conduct relating to Jefferson 
Street in the 21st Street plea agreement.

 Implicit in Gary's argument is the suggestion that, because 
prosecutors knew of the investigation relating to the Jeffer-
son Street property when they were negotiating a plea agree-
ment relating to the 21st Street property, the agreement 
should in fairness subsume the conduct relating to the Jeffer-

son Street property. It may be that Gary's lawyer would 
have advised his client against signing the plea agreement 
without explicit mention of the Jefferson Street property had 
he known of the ongoing investigation relating to that proper-
ty. This is beside the point, however. The fact is that the 
Government never agreed to forgo prosecution in connection 
with conduct related to the Jefferson Street property. In-
deed, prosecutors even abandoned their request for a sen-
tencing enhancement in the case involving the 21st Street 
property when the trial judge insisted on a promise that the 
Government would not later prosecute Gary for her alleged 
misdeeds in connection with the Jefferson Street property. 
It is therefore clear that the Government did not breach the 
plea agreement by bringing the Indictment related to the 
Jefferson Street property.

 Gary next argues that the Government's prosecution of the 
Jefferson Street property case was vindictive. Gary claims in 
particular that the Government brought the second indict-
ment to penalize her for successfully preventing the Govern-
ment from using the Jefferson Street property case to en-
hance her sentence in the 21st Street property case.

 This court recently summarized the doctrine of prosecutori-
al vindictiveness:

 The doctrine of prosecutorial vindictiveness developed as 
 a corollary to the vindictiveness doctrine that precludes, 
 as a matter of due process, imposition by a judge of a 
 more severe sentence upon retrial after a defendant has 
 successfully exercised a constitutional right or pursued a 
 statutory right of appeal or collateral attack. In the 
 prosecutorial context, the doctrine precludes action by a 
 prosecutor that is designed to penalize a defendant for 
 invoking any legally protected right available to a defen-
 dant during a criminal prosecution. To prove actual 
 vindictiveness requires objective evidence that the prose-
 cutor's actions were designed to punish a defendant for 
 asserting his legal rights. Such a showing is normally 
 exceedingly difficult to make. Because the underlying 
 concern is not whether a prosecutor has acted malicious-
 
 ly or in bad faith, but whether the fear of prosecutorial 
 vindictiveness may unconstitutionally deter a defendant's 
 exercise of a constitutional or statutory right, a presump-
 tion of vindictiveness may be warranted in cases in which 
 a reasonable likelihood of vindictiveness exists. The 
 government may overcome the presumption with objec-
 tive information in the record justifying the increased 
 sentence or charges. If the government produces such 
 evidence, the criminal defendant's only hope is to prove 
 that the justification is pretextual and that actual vindic-
 tiveness has occurred.
 
Maddox v. Elzie, 238 F.3d 437, 446 (D.C. Cir. 2001) (quota-
tions and citations omitted). The District Court found no 
evidence of actual vindictiveness. The trial judge also con-
cluded that Gary's claims were insufficient to raise the pre-
sumption of vindictiveness. See Tr. of Mots. Hr'g at 73-77 
(Sept. 21, 1999), reprinted in App. Ex. 10. This court reviews 
the District Court's finding regarding vindictiveness for clear 
error. See Maddox, 238 F.3d at 446.

 To invoke the presumption of vindictiveness, we must find 
that a reasonable likelihood of vindictiveness exists - that is, 
that the second indictment was "more likely than not attribut-
able to the vindictiveness on the part of" the Government. 
Alabama v. Smith, 490 U.S. 794, 801 (1989). The facts of this 
case do not give rise to this presumption. Gary points to 
nothing substantial indicating a reasonable likelihood that the 
second indictment was brought to penalize her for challenging 
her sentence in the first case. The Government had every 
right to prosecute Gary for both of her fraudulent schemes. 
The Government's attempt to enhance Gary's sentence in the 
case involving the 21st Street property made it clear that the 
prosecutors had no intentions of allowing Gary to escape 
punishment for her criminal conduct related to the Jefferson 
Street property. When the trial judge made it clear that the 
Government could either seek enhancement or prosecute, but 
not both, the Government elected to prosecute. This was not 
vindictive. The mere possibility that the second indictment 
was vindictively motivated does not suffice - Gary must show 
that there is a "'realistic likelihood"' of vindictive motivation. 

See United States v. Goodwin, 457 U.S. 368, 384 (1982) 
(quoting Blackledge v. Perry, 417 U.S. 21, 27 (1974)). This 
she has not done.

 What is more problematic in this case is the long delay 
between the dates of Gary's criminal conduct and the Govern-
ment's decision to prosecute. The District Court found that 
this delay placed a "substantial and unusual burden" on Gary, 
thus warranting a significant downward departure in her 
sentence. See J. & Commitment Order at 7, reprinted in 
App. Ex. 16. The District Court was within its authority to 
adjust Gary's sentence to address this delay in prosecution. 
However, there is nothing to indicate that the delay was 
otherwise vindictive.

 As noted in Maddox, our concerns over alleged vindictive-
ness do not relate to whether a prosecutor has acted mali-
ciously or in bad faith, but whether a prosecutor's actions are 
designed to punish a defendant for asserting her legal rights. 
238 F.3d at 446. Gary alleges that the prosecutor's decision 
to prosecute her was punishment for her objection to the 
Government's attempt to enhance the sentence in the case 
involving the 21st Street property. For the reasons that we 
have already indicated, this argument fails. Gary raises no 
plausible argument, however, that the Government delayed 
its prosecution to punish her for objecting to the proposed 
sentence enhancement. And even if there were some plausi-
bility to such a contention, it does not give rise to a presump-
tion of vindictiveness.

 Finally, Gary argued below that the Indictment should be 
dismissed because the undue delay in prosecution violated her 
Fifth Amendment right to due process. She did not pursue 
that claim on appeal, so we have no reason to address the 
matter.

B. Sentencing

 Gary challenges her sentencing on several grounds. She 
first claims that her criminal history score was improperly 
enhanced by conduct that post-dated the instant conviction by 
more than a year. She next contends that, assuming, ar-

guendo, that the trial court correctly calculated her criminal 
history, it abused its discretion in failing to grant a downward 
departure and relied on improper bases in applying a height-
ened score. Finally, she argues that the trial court erred in 
finding that the owner of the Jefferson Street property was a 
"vulnerable victim" for purposes of applying a two-level sen-
tencing enhancement. We reject these claims.

 The plain text of the Guidelines precludes Gary's criminal 
history claims. The District Court correctly included Gary's 
guilty plea in the 21st Street property case in the criminal 
history calculation for the Jefferson Street property case. 
Section 4A1.2(a)(1) provides that "[t]he term 'prior sentence' 
means any sentence previously imposed ... for conduct not 
part of the instant offense." Thus, the date of the sentence, 
not the date of the conduct, is what is relevant. See, e.g., 
United States v. Flowers, 995 F.2d 315, 317 (1st Cir. 1993) 
(Breyer, C.J.).

 This court may set aside refusals to depart downward only 
in limited situations: "if the judge correctly understood the 
Sentencing Guidelines and the evidence, knew he could de-
part, and yet decided to stick to the guideline range, there 
has been no incorrect application of the Guidelines ... and so 
the resulting sentence cannot be set aside." United States v. 
Sammoury, 74 F.3d 1341, 1343 (D.C. Cir. 1996). Here, Gary 
argues that in light of the facts of her case, the District Court 
should have departed. This court's role on appeal is merely 
to ensure that the District Court applied the Guidelines 
correctly, not to second guess the District Court's exercise of 
discretion. See, e.g., United States v. Greenfield, 244 F.3d 
158, 161 (D.C. Cir. 2001). Therefore, we have no basis upon 
which to review the departure decision on the grounds urged 
by Gary.

 Finally, Gary challenges the District Court's finding that 
the owner of the Jefferson Street property was a vulnerable 
victim under the Sentencing Guidelines. Gary claims that the 
relevant 1994 Guidelines provision limited the definition of 
"victim" so as to cover only the credit union that issued the 
loan, not the property owner who lost her property. Gary's 

argument rests on two premises: first, the District Court 
should have applied the 1994 version of the Sentencing Guide-
lines, and, second, under the 1994 Sentencing Guidelines, a 
property owner would not be considered a victim of a bank 
fraud. Gary further claims that the court should not apply 
the expanded definition of vulnerable victim added to the 
Guidelines in 1995, because this would infringe her protection 
against ex post facto action.

 We reject Gary's argument. Sentencing courts are obliged 
to apply the version of the Guidelines in effect at the time of 
sentencing, unless doing so would violate the ex post facto 
clause. See 18 U.S.C. s 3553(a)(4)(A); United States Sen-
tencing Guidelines Manual s 1B1.11(a), (b)(1) [hereinafter 
U.S.S.G.]. If there is an ex post facto problem, the sentenc-
ing court must use the version of the Guidelines in effect at 
the time of the charged conduct. See U.S.S.G. s 1B1.11(b)(1). 
It is not clear which version of the Guidelines the District 
Court applied but, regardless, these issues do not come into 
play in this case. Under the Sentencing Guidelines, "the last 
date of the offense of conviction is the controlling date for ex 
post facto purposes." U.S.S.G. s 1B1.11 cmt. n.2; see also 
United States v. Karro, 257 F.3d 112, 120 n.2 (2d Cir. 2001). 
The Indictment to which Gary pled guilty describes a scheme 
to defraud "continuing up to 1996." Indictment p 4, reprinted 
in App. Ex. 9. Because the last date of the offense of 
conviction is after November 1, 1995, the effective date of the 
1995 amendment, see U.S.S.G. app. C, amend. 521, the Dis-
trict Court could not have applied the 1994 Guidelines. The 
first premise of Gary's vulnerable victim enhancement claim 
is faulty. Her argument therefore fails.

 III. Conclusion

 For the foregoing reasons, the judgment of the District 
Court is

 Affirmed.