915 So.2d 460 (2005)
Harvey F. GARLOTTE, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-CP-01559-COA.
Court of Appeals of Mississippi.
April 19, 2005.
Rehearing Denied August 2, 2005.
Certiorari Denied December 1, 2005.
*462 Harvey F. Garlotte (pro se), attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Jackson, attorney for appellee.
Before LEE, P.J., MYERS and CHANDLER, JJ.
CHANDLER, J., for the Court:
¶ 1. On September 16, 1985, Harvey F. Garlotte pled guilty to two counts of murder in the Circuit Court of Marion County and one count of possession of marijuana with intent to distribute in the Circuit Court of Lamar County. On June 19, 2003, Garlotte filed motions for post-conviction relief (PCRs) on each of the convictions. In the PCRs, Garlotte alleged that his guilty pleas were involuntary because, in 1996, the district attorney breached the plea agreement by sending a letter to the Parole Board recommending that Garlotte never be released on parole. The Circuit Court of Marion County dismissed Garlotte's PCRs as successive writs.
¶ 2. Garlotte assigns seven errors on appeal: (1) whether his PCRs were barred as successive pleadings; (2) whether there was a plea agreement between the State and Garlotte; (3) whether the State violated its plea agreement with Garlotte; (4) whether the district attorney's actions were retaliatory, vindictive, and violative of Garlotte's rights of access to the courts and equal protection; (5) whether the actions of the district attorney and others violated Garlotte's right to substantive due process; (6) whether the plea agreement was void as against public policy; (7) whether Garlotte's convictions should be vacated and the charges dismissed with prejudice.
¶ 3. Finding no error, we affirm the Circuit Court of Marion County's dismissal of Garlotte's PCRs as successive writs.

FACTS
¶ 4. Garlotte pled guilty to two counts of murder and one count of possession of marijuana with intent to distribute. In his PCRs, Garlotte alleged that he pled guilty to the three charges in response to the district attorney's promise to recommend that the court sentence him to two life sentences to be served concurrently for the murder charges and three years to be served consecutively for the marijuana charges. He alleged that he agreed to plead guilty because the recommended penalty of concurrent life sentences would have given him the prospect of parole eligibility after ten years and nine months, rather than after twenty years and nine months as would have been the case if the life sentences had been run consecutively.
¶ 5. The circuit court accepted Garlotte's pleas at a single hearing. During the plea colloquy, the district attorney indeed recommended that Garlotte serve concurrent life sentences for the murder charges and a consecutive three year sentence for the marijuana charge. The court sentenced Garlotte according to the State's recommendation. On November 3, 1986, Garlotte filed a PCR concerning the marijuana charge. The dismissal of that PCR was affirmed by the Mississippi Supreme Court. Garlotte v. State, 530 So.2d 693 (Miss.1988). Garlotte also filed PCRs relating to the murder charges which were denied after an evidentiary hearing. The supreme court affirmed the denial of relief without comment. Garlotte v. State, 597 So.2d 641 (Miss.1992).
¶ 6. Garlotte filed his current PCRs on June 19, 2003. Those PCRs indicated that, on February 5, 2002, Garlotte requested that the district attorney's office send him copies of any and all communications from that office to the Mississippi *463 State Parole Board concerning the possibility of Garlotte's parole release. In response, the district attorney's office mailed Garlotte a letter that had been sent from Richard L. Douglass, the district attorney who prosecuted Garlotte's case, to the Mississippi Parole Board. In the letter, dated January 9, 1996, District Attorney Douglass opined that Garlotte should never be released. Garlotte attached copies of these letters to his PCRs. He also attached a copied letter from the Victim Assistance Coordinator for Marion County to the Mississippi Department of Corrections attempting, on behalf of the victims' families, to ascertain the date of Garlotte's parole eligibility.
¶ 7. Garlotte argued that his guilty pleas were induced by a promise that the district attorney would recommend concurrent sentences. He argued that, because the district attorney agreed to recommend sentences that included an earlier date for parole consideration, the district attorney breached the plea agreement by sending a letter that would have the effect of causing or contributing to the denial of his parole release. The circuit court dismissed Garlotte's PCRs as successive pleadings. Miss.Code Ann. § 99-39-23(6) (Supp.2004). The court found that, notwithstanding the successive pleadings bar, Garlotte's argument was without merit because the district attorney had agreed only to recommend a certain sentence in exchange for the pleas, and there was no record evidence that the district attorney's office had agreed not to oppose Garlotte's parole release.

LAW AND ANALYSIS
¶ 8. We review Garlotte's issues together, but first turn to the procedural posture of this appeal. Garlotte's notice of appeal pertained to the June 19, 2003 judgment of the Marion County Circuit Court. That judgment referenced all three of Garlotte's PCRs, but was somewhat ambiguous about whether it operated to dismiss one or all of the PCRs. We observe that a jurisdictional problem is raised by the dismissal by the Marion County Circuit Court of a PCR concerning a Lamar County conviction. This is because the court in which the conviction was obtained has exclusive jurisdiction of a PCR from that conviction. Miss.Code Ann. § 99-39-7 (Supp.2004); Stanley v. Turner, 846 So.2d 279, 281(¶ 7) (Miss.Ct.App.2002).
¶ 9. On November 7, 2003, Garlotte filed a petition for a writ of mandamus in the supreme court. Garlotte contended that the June 19 judgment had adjudicated only one of his PCRs and that two PCRs remained pending in the circuit courts of Marion and Lamar counties. He sought to compel the circuit courts to rule on both PCRs. On December 18, 2003, the supreme court denied Garlotte's petition, finding that the June 19 order had "addressed [all three of] the motions...." On January 27, 2004, the supreme court denied Garlotte's motion for reconsideration, stating that the court had denied Garlotte's petition for a writ of mandamus "because the trial court's order encompassed all three of Garlotte's post-conviction relief motions." Since the supreme court has determined that the June 19 order adjudicated all three of Garlotte's PCRs, we proceed to review the dismissal of Garlotte's three PCRs as successive.
¶ 10. The State contends that Garlotte's PCRs were barred as successive and also barred by the statutory three year limitations period. See Miss.Code Ann. § 99-39-23(6) (successive pleadings bar); § 99-39-5(2) (Supp.2004) (time bar). The State is correct. Garlotte has already collaterally attacked all three of his convictions on post-conviction relief. Mississippi Code Annotated section 99-39-23(6) provides *464 that "any order dismissing the prisoner's motion or otherwise denying relief under this article is a final judgment and ... shall be a bar to a second or successive motion under this article." Therefore, Garlotte's PCRs were barred as successive writs. And, Garlotte's PCRs were time barred because they were filed over three years after the entry of the judgment of conviction. Miss.Code Ann. § 99-39-5(2) (Supp.2004).
¶ 11. Garlotte maintains that his arguments are excepted from the procedural bars because they rest upon newly discovered evidence in the form of the 1996 letter from District Attorney Douglass. Garlotte contends that, because he did not know at the time of his guilty plea that the district attorney would later act in breach of the plea agreement, the letter demonstrating a breach was newly discovered evidence under Mississippi Code Annotated section 99-39-23(6) (Supp.2004).
¶ 12. Mississippi Code Annotated section 99-39-23(6) (Supp.2004) lists several exceptional situations in which successive pleadings will be allowed:
[e]xcepted from this prohibition is a motion filed pursuant to Section 99-19-57(2), Mississippi Code of 1972, raising the issue of the convict's supervening insanity prior to the execution of a sentence of death.... Likewise excepted from this prohibition are those cases in which the prisoner can demonstrate either that there has been an intervening decision of the Supreme Court of either the State of Mississippi or the United States which would have actually adversely affected the outcome of his conviction or sentence or that he has evidence, not reasonably discoverable at the time of trial, which is of such nature that it would be practically conclusive that had such been introduced at trial it would have caused a different result in the conviction or sentence. Likewise excepted are those cases in which the prisoner claims that his sentence has expired or his probation, parole or conditional release has been unlawfully revoked.
Mississippi Code Annotated section 99-39-23(2) (Supp.2004) also contains an exception from the time bar for newly discovered evidence.
¶ 13. "Newly discovered evidence" is evidence "which could not have been discovered by the exercise of due diligence at the time of trial, as well as being almost certainly conclusive that it would cause a different result." Frost v. State, 781 So.2d 155, 158 (¶ 7) (Miss.Ct. App.2000). A threshold problem with Garlotte's claim that the district attorney's letter is newly discovered evidence is that the letter did not exist at the time of Garlotte's guilty pleas. We observe that, in cases controlled by the Federal Rules of Civil Procedure, "newly discovered evidence" sufficient for a new trial must be evidence of facts existing at the time of the original trial, not facts which arose after the trial. Johnson v. Offshore Exp., Inc., 845 F.2d 1347, 1357 (5th Cir.1988) (citing F.R.C.P. 60(b)(2)). Since the district attorney's letter did not exist until 1996, it is impossible for the letter to have been "evidence" at Garlotte's guilty pleas in 1985. Therefore, the letter could not constitute newly discovered evidence excepting Garlotte's claim from the procedural bars.
¶ 14. Notwithstanding the procedural bars, this Court may notice errors raised on post-conviction relief that affect a prisoner's fundamental rights. Ivy v. State, 731 So.2d 601, 603(¶ 13) (Miss.1999). We may apply the plain error rule to an error not properly preserved for review if the error affects a prisoner's substantive or fundamental rights. Williams v. State, 794 So.2d 181, 187(¶ 23) (Miss.2001). "The *465 plain error doctrine has been construed to include anything that `seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." Williams, 794 So.2d at 187(¶ 23).
¶ 15. Garlotte alleges that the district attorney's acts breached the plea agreement in violation of his due process rights. The Fifth Circuit has held that a prisoner's claim that the government breached a plea agreement may amount to plain error. United States v. Goldfaden, 959 F.2d 1324, 1328 (5th Cir.1992). This is because "[d]efendants... give up constitutional rights in reliance on promises made by prosecutors, implicating the Due Process Clause once the courts accept their pleas." Id. (citing Mabry v. Johnson, 467 U.S. 504, 507-09, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984)). Garlotte's claim rests upon the district attorney's acts that occurred eleven years after the entry of Garlotte's guilty pleas. Due to the timing of the district attorney's letter, Garlotte could not have collaterally attacked the pleas based on the alleged breach within the three year limitations period or in his earlier PCRs. Garlotte has supported his argument by attaching a copy of the letter which he claims established a breach of the plea agreement, as required by Mississippi Code Annotated section 99-39-9(1)(e) (Supp.2004). For the above reasons, we examine Garlotte's claim of involuntary pleas for the presence of plain error in the form of a breached plea agreement.
¶ 16. Garlotte and the State disagree on the question of whether a plea agreement existed. It is undisputed that, at the plea hearing, the State recommended that Garlotte serve concurrent life sentences for murder pursuant to an earlier agreement between Garlotte and the district attorney. The State now argues that this arrangement was not a "plea agreement" because the trial court was never bound to accept the State's recommendation. Garlotte urges that the "plea agreement" simply consisted of his agreement to plead guilty in exchange for the State's promise to recommend a certain sentence, which the trial court could then accept or reject. Garlotte is correct. Uniform Rule of Circuit and County Court Practice 8.04(B)(2) provides that the prosecuting attorney and the defendant may reach an agreement that, "upon an entry of a plea of guilty to the offense charged ... the attorney for the state may ... [m]ake a recommendation to the trial court for a particular sentence, with the understanding that such recommendation or request will not be binding upon the court." Though Rule 8.04(B)(2) was adopted in 1995, the rule reflects practices in place at the time Garlotte entered his guilty pleas. Edwards v. State, 465 So.2d 1085, 1086 (Miss.1985). Thus, the arrangement between Garlotte and the State in which the State would recommend concurrent sentences in exchange for Garlotte's guilty pleas was a plea agreement, as the term is commonly understood in the State of Mississippi.
¶ 17. In Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the United States Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Thus, "if the defendant is found to have detrimentally relied on the State's promise made pursuant to his plea, the State is bound by the provisions of that plea agreement." Lewis v. State, 776 So.2d 679, 681(¶ 13) (Miss.2000). In Santobello, the *466 prosecution agreed not to make a sentencing recommendation if Santobello pled guilty. Santobello, 404 U.S. at 258, 92 S.Ct. 495. Santobello entered the plea and it was accepted by the court. Id. At a later sentencing hearing, a prosecutor other than the one who had negotiated the plea appeared and recommended the maximum sentence; defense counsel objected on the basis of the plea agreement. Id. at 259, 92 S.Ct. 495. The supreme court held that the sentencing recommendation breached the plea agreement upon which the defendant had significantly relied in entering the plea. Id. at 262, 92 S.Ct. 495. The court remanded for the state court to determine whether the appropriate relief was specific performance of the plea agreement by resentencing the defendant before another judge, or allowing the defendant to withdraw the plea. Id. at 263, 92 S.Ct. 495.
¶ 18. Garlotte avers that the reason he pled guilty was that the district attorney's promised recommendation of concurrent life sentences included an earlier parole eligibility date than consecutive life sentences. He alleges that the State's recommendation of a sentence that included parole eligibility after ten years and nine months was the sole impetus for his guilty pleas, and that he would not have pled guilty had he known that the district attorney would later send a letter recommending against his parole release. He argues that the district attorney's agreement to recommend concurrent sentences included an implied promise never to do anything to hamper Garlotte's future parole release, and that the district attorney breached this implied agreement by recommending to the Parole Board that Garlotte never be released. Garlotte also contends that he should have been informed at the plea hearing that the district attorney might make negative recommendations to the Parole Board in the future.
¶ 19. The State abided by the express terms of its agreement with Garlotte by recommending concurrent life sentences. Garlotte does not contend that the district attorney ever made any express promises concerning parole. Rather, he argues that the agreement to recommend concurrent sentences included an implied promise not to impugn him before the Parole Board. Garlotte's claim of an implied promise is without merit. A criminal sentence does not include any guarantee of release on parole. This is because parole eligibility is a matter of legislative grace, and the grant or denial of parole is entirely at the discretion of the Parole Board. Shanks v. State, 672 So.2d 1207, 1208 (Miss.1996). Because Garlotte's sentence did not include a guarantee of parole release, the State's sentencing recommendation did not imply that the district attorney would henceforth refrain from impacting his parole release. Since the plea agreement did not include a promise that the prosecution would never recommend against Garlotte's parole release, the district attorney did not breach the agreement by sending the letter opining that Garlotte should never be paroled.
¶ 20. Garlotte argues that the district attorney's letter rendered his plea involuntary because it effectively increased his minimum sentence. In order to enter a voluntary and intelligent guilty plea, a defendant must be advised of the charges against him and the consequences of the plea. Alexander v. State, 605 So.2d 1170, 1172 (Miss.1992). Garlotte argues that the district attorney's letter increased his minimum sentence beyond what he understood the minimum to be at the plea hearing. This argument is without merit. As previously discussed, because parole is granted or denied at the discretion of the Parole *467 Board, the denial of parole does not increase the minimum sentence for the crime. See Robinson v. Israel, 603 F.2d 635, 639 (7th Cir.1979). Garlotte in fact became eligible for parole consideration after ten years and nine months, which he admits was his understanding at the time of his pleas. Moreover, it cannot be said that the district attorney's letter operated unilaterally to increase the time Garlotte has been incarcerated. This is because the Parole Board considers a variety of information about the prisoner in rendering its decision, and, specifically, may not treat "a letter of protest against granting an offender parole" as the only reason for denying parole. Miss.Code Ann. § 47-7-17 (Rev.2004).[1]
¶ 21. Additionally, the trial court was not required to inform Garlotte of the possibility that the district attorney might later oppose his release on parole. In order to enter a voluntary and intelligent plea, the defendant must be informed of the consequences of the plea. Alexander, 605 So.2d at 1172. It is well established that parole is not a consequence of a guilty plea because it is a matter of legislative grace. Ware v. State, 379 So.2d 904, 907 (Miss.1980). Therefore, in determining the voluntariness of the plea during the plea colloquy, the trial court need not determine whether the defendant understands his eligibility or non-eligibility for parole. Id.
¶ 22. Finally, Garlotte contends that the district attorney's letter constituted prosecutorial vindictiveness because the letter stated, as partial support for its conclusion that Garlotte should never be paroled, "[s]ince Mr. Garlotte has been imprisoned he has filed false post conviction motions. Has sworn falsely against my office, the Court and defense counsel." The letter also discussed Garlotte's crimes and his motive for the murders, and stated that "[l]ike most felons, he wants to blame everyone but himself." Garlotte argues that the letter evinced vindictiveness against Garlotte for exercising his right of access to the courts by pursuing post-conviction relief.
¶ 23. The doctrine of prosecutorial vindictiveness "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution." Maddox v. Elzie, 238 F.3d 437, 446 (D.C.Cir.2001) (citing Blackledge v. Perry, 417 U.S. 21, 27-29, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)). Without determining the question of whether the doctrine applies in the context of a parole determination, we find from the content of the district attorney's letter that the letter did not evince prosecutorial vindictiveness. From its plain language, the letter was in no way critical of Garlotte's exercise of his right to pursue post-conviction relief. Rather, the letter merely informed the Parole Board that Garlotte had committed perjury in the course of his earlier post-conviction actions. A prisoner has no right to commit perjury, and may be prosecuted therefor. Myers v. State, 583 So.2d 174, 178 (Miss.1991). This issue is without merit.
*468 ¶ 24. We have reviewed Garlotte's arguments concerning the district attorney's letter for plain error and find that no error occurred. We decline to address Garlotte's other arguments because they are outside the scope of the issue of whether the plea agreement was breached in violation of Garlotte's Due Process rights. Therefore, we affirm the dismissal of Garlotte's PCRs as successive pleadings. Miss.Code Ann. § 99-39-23(6) (Supp.2004).
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF MARION COUNTY DISMISSING THE MOTIONS FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MARION COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Garlotte also argues that the letter from the Marion County Victim Assistance Coordinator breached the plea agreement. His primary complaint about this letter was an unsupported allegation that it contained false information. Unlike the district attorney's letter, the coordinator's letter simply requested the date of Garlotte's parole eligibility on behalf of the victims' families and did not recommend against Garlotte's parole. Therefore, we find that the letter is irrelevant to Garlotte's argument regarding a breach of the plea agreement.