KING, C. J.,
 

 for the Court.
 

 ¶ 1. The State appeals the Bolivar County Circuit Court’s grant of Bass’s motion for post-conviction relief and order for a new trial. The State alleges error in the following issues:
 

 I.Whether Bass’s motion for post-conviction relief was procedurally barred;
 

 II. Whether Bass presented newly discovered evidence to warrant post-conviction relief;
 

 III. Whether the State committed
 
 Brady
 
 violations;
 

 IV. Whether Bass received effective assistance of counsel;
 

 V. Whether Bass was entitled to relief based on cumulative error; and
 

 VI. Whether the trial court erred in admitting Bass’s exhibits without determining their admissibility.
 

 We find no error and affirm.
 

 PROCEDURAL HISTORY
 

 ¶ 2. On December 7, 1988, Jimmy Bass and Markius Thomas were found guilty of aggravated assault and armed robbery. The conviction stemmed from the robbery of the “61 Quiki” and the shooting of Mary Townsend, a convenience store clerk in Cleveland, Mississippi. Bass and Thomas received sentences of twenty years for aggravated assault and thirty years for the armed robbery to be served consecutively. Bass and Thomas appealed their convictions and sentences. The supreme court affirmed Bass’s conviction in
 
 Bass v. State,
 
 597 So.2d 182 (Miss.1992).
 

 ¶ 3. On May 12, 1995, the supreme court granted Bass leave to proceed in the trial court with a motion for post-conviction relief. Upon receipt of the motion, the trial court denied the relief sought, and Bass appealed. The supreme court affirmed the judgment of the trial court in
 
 Bass v. State,
 
 703 So.2d 861 (Miss.1997).
 

 ¶ 4. On March 9, 2005, Bass filed a second application for leave to proceed in the trial court with a motion for post-conviction relief. After a thorough hearing on the matter, the supreme court granted Bass’s request for leave to proceed. After discovery had been completed, the trial court held an evidentiary hearing on May 22, 2006. On June 14, 2006, the trial court
 
 *355
 
 granted Bass’s motion for post-conviction relief, vacated his convictions, and ordered a new trial.
 

 ¶ 5. Aggrieved, the State now appeals.
 

 FACTS
 

 ¶ 6. On July 17, 1988, the “61 Quiki,” a convenience store in Cleveland, Mississippi, was robbed by three young males. Townsend, the cashier at the time of the robbery, was shot by one of the young males. She overcame her injuries to assist the police by attempting to identify her assailants and testify at trial.
 

 ¶ 7. Townsend was able to readily identify Thomas during a physical lineup. However, she was unable to positively identify Bass as an accomplice. At trial, Townsend stated that Bass appeared to be of the same height and weight as one of her assailants, but she was unable to swear that he was one of the robbers.
 

 ¶ 8. The day after the robbery, Keith Thompson came forward with information about the robbery. He stated that he saw Bass and Thomas running down the road away from the convenience store. He was able to identify them because he had known them for a long time. Keith further stated that as he saw Bass and Thomas running, he called out to Thomas. Thomas responded that he would catch up with Keith later. Then Keith testified that the night before the robbery, Bass allowed him to handle a .38 revolver.
 

 ¶ 9. Two days after Keith went to the police, Anita Thompson, Keith’s sister, informed the police that she also knew Bass. She stated that the night before the robbery occurred, Bass informed her that he would rob the “61 Quiki.”
 

 ¶ 10. Bass and Thomas were subsequently indicted for the robbery of the “61 Quiki” and the aggravated assault of Townsend. No further information was found about the alleged third individual involved in the robbery. Following the indictment, Bass and Thomas were tried together. At trial, Townsend and Keith testified to the above facts. Anita was called to testify that Bass had stated the night before the robbery that he was going to rob the “61 Quiki.” Upon taking the stand, she stated that Bass had never made that statement. Even after the State presented a statement to the contrary, which Anita had signed, she maintained that Bass had not told her that he was going to rob the store.
 

 ¶ 11. Bass testified in his own defense and presented several alibi witnesses. They all testified that Bass was at home at the time of the robbery. Bass admitted that he was with Thomas earlier in the day, but he went home before the robbery.
 

 ¶ 12. After the evidence was presented, the jury found Bass and Thomas guilty of armed robbery and aggravated assault. Upon appeal, the supreme court affirmed the conviction.
 

 ¶ 13. After the trial, Keith was incarcerated for an unrelated armed robbery. While incarcerated, Keith encountered Bass and signed a notarized statement that Keith had provided false testimony against Bass. The affidavit stated that Officer Serio paid Keith to testify. After receipt of the affidavit, Bass filed a motion for post-conviction relief. The State responded with a transcribed interview between Officer George Serio and Keith. During the interview, Keith reaffirmed his testimony at trial and stated that he had not lied at trial. Further, he stated that he signed a piece of paper for Bass without reading it.
 

 ¶ 14. Presented with these conflicting statements by Keith, the trial court dismissed the motion for post-conviction relief because it appeared Keith never intended
 
 *356
 
 to recant his testimony. On appeal, the supreme court affirmed the ruling of the trial court.
 

 ¶ 15. Eight years later, the Innocence Project became involved in Bass’s case. Upon learning of Bass’s situation, the Innocence Project performed a thorough investigation in the matter. After the investigation, the Innocence Project assisted Bass by filing a motion for leave to proceed in the trial court. The motion included several pieces of newly discovered evidence that were not presented to the jury. Further, it claimed that the new evidence was unknown at trial because it was either undiscoverable through due diligence, not discovered due to trial counsel’s ineffectiveness, or was wrongfully withheld by the State. The alleged facts included:
 

 1) Townsend was presented with three different lineups which included Bass, but she failed to identify him;
 

 2) Thomas was arrested thirty-six hours after the crime for a robbery of a separate convenience store with two accomplices, neither of which were Bass;
 

 3) Keith was on juvenile parole at the time he gave his statement to police;
 

 4) Keith had a history of serious mental illnesses, including auditory and visual hallucinations, that pre-dated his statement to police;
 

 5) Keith expected a reward for testifying that he received after the trial in the amount of $250;
 

 6) Keith was a prior informant for Officer Serio;
 

 7) Keith had a reputation for dishonesty in the community;
 

 8) Anita expected an award for testifying that she received after trial in the amount of $50; and
 

 9) Six additional alibi witnesses could have confirmed that Bass was at home at the time of the robbery.
 

 ¶ 16. The supreme court granted leave to proceed with the motion in the trial court. After discovery, the trial court held an evidentiary hearing where Keith, Anita, Officer Serio, and Bass’s attorney were among those called as witnesses.
 

 ¶ 17. Based upon the testimony presented, the trial court found that post-conviction relief was proper. Specifically, it found that “there is no doubt that justice requires [Bass] be granted a new trial.”
 

 STANDARD OF REVIEW
 

 ¶ 18. Our standard of review after an evidentiary hearing in post-conviction relief matters is well established. “We will not set aside such finding unless it is clearly erroneous. Put otherwise, we will not vacate such a finding unless, although there is evidence to support it, we are on the entire evidence left with the definite and firm conviction that a mistake has been made.”
 
 Burns v. State,
 
 879 So.2d 1000, 1004 (¶ 14) (Miss.2004) (quoting
 
 Meeks v. State,
 
 781 So.2d 109, 111 (¶ 5) (Miss.2001)). Further, “[t]his Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court’s findings of fact.”
 
 Johns v. State,
 
 926 So.2d 188, 194 (¶ 29) (Miss.2006) (quoting
 
 Mullins v. Ratcliff;
 
 515 So.2d 1183, 1189 (Miss.1987)).
 

 ANALYSIS
 

 ¶ 19. The State presents five separate allegations of error. However, the majority of the allegations contain at least some form of the allegation that the trial court was procedurally barred from hearing all the issues that Bass presented. Therefore, we will address that issue first.
 

 
 *357
 
 I. Whether Bass’s motion for post-conviction relief was procedurally barred and failed to meet any exceptions.
 

 ¶ 20. The State argues Bass was procedurally barred from bringing several claims to the trial court. It specifically alleges that the entire motion for post-conviction relief was timed-barred and suc-eessive-writ-barred.
 

 ¶ 21. While this was Bass’s second motion for post-conviction relief and it was filed sixteen years after his conviction, Bass received permission from the supreme court to bring this motion for post-conviction relief at the trial court. Further, the supreme court had a lengthy hearing on the matter as evidenced by the parties’ statements made during oral arguments. At the hearing, the State responded to Bass’s application by stating that it was procedurally barred.
 

 ¶ 22. However, the supreme court issued a general order allowing Bass to file his motion in the trial court. The order read:
 

 This matter came before a panel of this Court consisting of Cobb, P.J., Carlson and Randolph, JJ., on the Application for Leave to File Motion of Post-Conviction Relief filed by counsel for Jimmy Bass. Also before the panel is the response filed by counsel for the State of Mississippi. After due consideration, the panel find the Application to be well taken and that is should be granted.
 

 IT IS THEREFORE ORDERED that the Application for Leave to File Motion for Post-Conviction Relief filed by counsel for Jimmy Bass is hereby granted. Bass may proceed in the Circuit Court of Bolivar County, trial court case number 7042, with his Motion for Post-Conviction Relief.
 

 ¶ 23. The supreme court does not always grant such a broad order. In
 
 Manning v. State,
 
 884 So.2d 717, 733 (¶58) (Miss.2004), the supreme court only allowed Manning to proceed on a few claims. In addition, in
 
 Wiley v. State,
 
 517 So.2d 1373, 1378 (Miss.1987), Wiley was allowed to proceed only on two of his eighteen claims.
 

 ¶ 24. In addition Mississippi Code Annotated Section 99-39-27(5) (Rev.2006) provides that:
 

 [ujnless it appears from the face of the application, motion, exhibits and the pri- or record that the claims presented by such are not procedurally barred under Section 99-39-21 and that they further present a substantial showing of the denial of a state or federal right,
 
 the court shall by appropriate order deny the application.
 

 (Emphasis added). In this case, the supreme court must have found that the petition on its face was not procedurally barred.
 

 ¶ 25. This case does not stand for the proposition that every general order allows every claim to overcome the procedural bars. However, in light of the broad order of the supreme court, the cases, and the statute, the trial court was correct in addressing all of the issues in Bass’s motion for post-conviction relief.
 

 II. Whether Bass presented newly discovered evidence to warrant post-conviction relief.
 

 ¶ 26. Regardless of the procedural bars discussed, newly discovered evidence can overcome the successive-writ and time bar. Miss.Code. Ann. § 99-39-5(2) (Rev.2000). The State accurately points out that newly discovered evidence is that “which could not have been discovered by the exercise of due diligence at the time of trial, as well as being almost cer
 
 *358
 
 tainly conclusive that it would cause a different result.”
 
 Garlotte v. State,
 
 915 So.2d 460, 464 (¶ 13) (Miss.Ct.App.2005). Further, the newly discovered evidence must have been facts that existed at the time of trial.
 
 Id.
 

 ¶ 27. The majority of the newly discovered evidence presented at the evidentiary hearing dealt with Keith. He had recanted his testimony from the trial, been diagnosed with a mental illness, was determined to be a police informant, and was on juvenile parole at the time he gave a statement to the police. The other newly discovered evidence involved Anita. She received a reward for testifying and the statement provided to police before the trial was contradicted by two witnesses.
 

 ¶ 28. We first look at the fact that Keith recanted the testimony he gave at the trial and the credibility of that testimony. The trial court found the testimony of Keith to be “highly suspect.” Regarding Keith’s testimony, the trial court stated, “The [cjourt recognizes that the mere fact a witness recants his prior testimony is not automatic grounds for a new trial, but the facts in this matter are much more egregious.”
 

 ¶29. The trial court’s language seems to track the case cited by Bass in his brief:
 

 recantation by a witness called on behalf of the prosecution does not necessarily entitle accused to a new trial.... The question whether a new trial shall be granted on this ground depends on all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial, and its determination is left to the sound discretion of the trial court free from interference except for abuse of such discretion.
 

 Williams v. State,
 
 669 So.2d 44, 53 (Miss. 1996) (quoting
 
 Bradley v. State,
 
 214 So.2d 815, 817 (Miss.1968)). The trial court recognized that it had to view the recantation in light of all the evidence presented at the evidentiary hearing, and it found that Keith’s testimony at the trial was very troublesome.
 

 ¶ 30. Keith disavowed that he saw Bass and Thomas running from the convenience store shortly after the robbery. He further stated that the only reason he said anything about Thomas and Bass to Officer Serio was because Officer Serio stated that Thomas and Bass were in custody. During the evidentiary hearing, Keith was confronted about the conflicting affidavits he had previously signed. He responded that he signed Bass’s affidavit without reading it, and he signed the State’s affidavit reaffirming his trial testimony while intoxicated. However, he stated that he was telling the truth as best he could remember at the evidentiary hearing.
 

 ¶ 31. The trial court also took into account the fact that Keith was diagnosed with a mental illness for which he still took medication. While the State accurately points out that Keith was not diagnosed with the illness until after trial, other evidence was presented about his mental illness at the evidentiary hearing. Keith stated that he had suffered from auditory and visual hallucinations ever since he was a “little bitty thing.” That statement in conjunction with the later diagnosis, could have provided the trial court with sufficient information to completely doubt the veracity of Keith’s previous testimony.
 

 ¶ 32. Three additional pieces of evidence that the trial court considered in its order were that: (1) Keith was on juvenile parole when he gave his statement to police, (2) he was a prior informant for Officer Serio, and (3) he was given a reward for his testimony at trial. These three pieces of evidence are considered impeachment evidence. The State alleges that newly discovered evidence cannot be im
 
 *359
 
 peachment evidence.
 
 Carr v. State,
 
 873 So.2d 991, 997 (¶ 3) (Miss.2004). However, as noted in
 
 Williams,
 
 upon a recantation of previous testimony, the trial court must look to “all the circumstances of the case.”
 
 Williams,
 
 669 So.2d at 53.
 

 ¶ 33. In light of Keith’s recantation of his trial testimony and his mental illness, it was not improper for the trial court to consider the additional pieces of impeachment evidence when determining whether a new trial should be granted on the basis of newly discovered evidence.
 

 ¶ 34. We are now left with the question of whether the newly discovered evidence would have conclusively led to a different outcome. During the trial, only two people were able to conclusively link Bass to the robbery, Keith and Anita. While Townsend stated Bass looked exactly like one of the robbers, same height and weight, she was unable to swear that Bass was one of the assailants.
 

 ¶ 35. As thoroughly discussed, Keith recanted his trial testimony that he saw Bass fleeing the convenience store. In addition, Anita had previously provided a statement to police that Bass had stated he was going to rob the “61 Quiki.” However, at trial she denied making that statement. Therefore, Keith’s testimony was crucial in obtaining a conviction against Bass. Without Keith’s testimony that he spotted Bass fleeing the convenience store, it is quite conclusive that the result of the trial would have been different.
 

 ¶ 36. We now turn to the remaining allegations of error.
 

 III. Whether the State committed
 
 Brady
 

 [1]
 

 violations.
 

 ¶ 37. The trial court’s order stated that “[t]he Petitioner should have been informed back in 1988 of Mr. Thompson’s parole status and the fact that the was used as an informant by the police under
 
 Brady.”
 
 However, it went on to say that if the State was not privy to the information, as required for a
 
 Brady
 
 violation, then the evidence should still be considered under the newly discovered evidence analysis. Therefore, even if the State did not commit a
 
 Brady
 
 violation, it would still grant a new trial based on its analysis of the newly discovered evidence. Since the trial court found that a new trial was warranted even without a
 
 Brady
 
 violation, we do not need to address whether the State committed any
 
 Brady
 
 violations.
 

 IV. Whether Bass received effective assistance of counsel.
 

 ¶ 38. The basis for this claim of error comes from the statement in the trial court’s order that trial counsel failed to interview two witnesses that would have provided favorable testimony to Bass’s case. Since they were not interviewed, their testimony was not presented to the jury. The State argues that this issue is barred by res judicata since ineffective assistance of counsel was directly addressed in Bass’s first motion for post-conviction relief.
 

 ¶ 39. Anita told police in her statement that she was with two women when Bass told her he was going to rob the “61 Quiki.” However, the two women stated that they never heard anything like that from Bass. Further, one of the women stated that she “didn’t hang with [Anita] like that.” While the trial court stated that it was unfortunate that these women were not interviewed, it did not state that the conduct of the attorney was deficient.
 

 ¶ 40. While Bass’s trial counsel did state during the evidentiary hearing that he performed no other investigation of the
 
 *360
 
 case other than reading the State’s discovery, the trial court did not find that Bass received ineffective assistance of counsel. It appears that the trial court focused more on the circumstances surrounding Keith and Keith’s testimony than on the effectiveness of Bass’s trial counsel. Therefore, it is not necessary to address whether the issue of ineffective assistance of counsel is barred by res judicata.
 

 V. Whether the evidence presented resulted in cumulative error.
 

 ¶41. The State claims that the trial court was in error when it held that the evidence as a whole required a new trial, essentially finding cumulative error. The State’s interpretation of the trial court’s order is derived from the statement that “[i]t is the opinion of this [c]ourt that no one issue raised by the Petitioner, in isolation, would warrant the relief he seeks; however, when considered as a whole, there is no doubt that justice requires the Petitioner be granted a new trial.”
 

 ¶ 42. The State alleges that statement amounts to the trial court finding no
 
 Brady
 
 violations, no ineffective assistance of counsel, or insufficient newly discovered evidence, since any of those errors alone would be grounds for a new trial. However, that does not appear to be the intent of the trial court’s order. It is this Court’s interpretation that the order referenced Bass’s numerous allegations of newly discovered evidence. While one specific piece of evidence, such as Keith’s recantation may not warrant relief,
 
 all the newly discovered evidence
 
 taken together requires a new trial.
 

 VI. Whether the trial court erred in admitting Bass’s evidentiary exhibits.
 

 ¶ 43. The State alleges that the trial court erred when it allowed Bass to introduce fifty different exhibits into evidence without laying a proper foundation. Specifically, the State claims that it was prejudiced because “it was not afforded a chance to argue [the exhibit’s] irrelevance or rebut any of the claims and hearsay statements contained within the fifty exhibits.”
 

 ¶ 44. We note that the trial court admitted all the exhibits at one time in an effort to speed the process of the hearing. In cases where a judge sits without a jury, the supreme court has deemed that the judges “are capable of ignoring inadmissible evidence such as hearsay.”
 
 Harris v. Johnson,
 
 767 So.2d 181, 185 (¶ 15) (Miss. 2000). Likewise, the trial judge was capable of sorting through the exhibits based upon their relevancy.
 

 ¶ 45. The State points to one exhibit, an affidavit from a hand-writing expert who had previously been rejected as an expert witness in a separate court. However, the affidavit of that witness was not needed since it verified Keith’s signature on several items; and it was undisputed at the evidentiary hearing that Keith, in fact, signed those items. Also, it appears from the trial court’s order that it relied primarily on the information discussed during the evidentiary hearing, including those exhibits discussed during the hearing.
 

 ¶ 46. Since the State is unable to specifically point to any prejudicial exhibit and the trial court is deemed to be able to ignore inadmissible and irrelevant evidence, this issue is without merit.
 

 CONCLUSION
 

 ¶ 47. We find that the trial court did not abuse its discretion by granting Bass a new trial. The trial court had sufficient newly discovered evidence ranging from the recantation of Keith to his mental state to have serious doubts as to the veracity of
 
 *361
 
 his testimony at trial. Further, without the testimony of Keith at the original trial, there was no testimony that conclusively linked Bass to the robbery. Clearly, the trial court did not abuse its discretion when it found that “there is no doubt that justice requires [Bass] be granted a new trial.” Therefore, we affirm the judgment of the trial court granting a new trial.
 

 ¶ 48. THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
 

 [1]
 

 .
 
 Brady v. Maryland,
 
 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)