# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CP-01034-COA

JONATHAN EDWARDS                                                    APPELLANT

v.

STATE OF MISSISSIPPI                                                 APPELLEE

DATE OF JUDGMENT:              06/26/2018
TRIAL JUDGE:                   HON. PRENTISS GREENE HARRELL
COURT FROM WHICH APPEALED:     MARION COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        JONATHAN EDWARDS (PRO SE)
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: LAURA HOGAN TEDDER
NATURE OF THE CASE:            CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                   AFFIRMED - 09/24/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., WESTBROOKS AND C. WILSON, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     The Marion County Circuit Court convicted Jonathan Edwards of burglary pursuant to a guilty plea.  Appearing pro se, he appeals the circuit court's denial of his motions for post-conviction collateral relief.  After review of the record, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On December 17, 2015, Jonathan Edwards was indicted by a Marion County grand jury for six counts of burglary of a dwelling and one count of attempted burglary.  On January 6, 2017, the State filed a "Motion to Amend Indictment" encompassing each of the seven charges. Citing seven separate, prior convictions, the State's motion sought to also

charge Edwards as a habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2015).

¶3. At a hearing in the Marion County Circuit Court on January 18, 2017, the State's motion was granted. During the same hearing, Edwards pled guilty to two of the seven charges in open court; the remaining five counts were dismissed.[1] The court's order, entered January 27, 2017, sentenced Edwards as a habitual offender, for two counts of burglary of a dwelling, pursuant to Mississippi Code Annotated section 97-17-23 (Rev. 2014). Edwards was ordered to serve two concurrent terms ("hard time") of twenty-five years in the custody of the Mississippi Department of Corrections, one term for each charge.[2] At the time of his arrest Edwards was on parole from a fifteen-year sentence resulting from a prior unrelated felony conviction. As a result of the burglary arrest and convictions, Edwards's parole was revoked, and he was ordered to serve the initial sentence in prison, consecutive to the January 27, 2017 burglary sentence.

¶4. On September 8, 2017, Edwards filed two motions for post-conviction collateral relief (PCR) with the circuit court. Following a seven-month interlude, Edwards also filed a "Motion to Expedite Procedures" on April 16, 2018, along with a brief in support of the PCR

---

[1] Edwards pled guilty to two counts of burglary of a dwelling, namely cause numbers: K15-0223H (burglary at the home of David Spiers) and K15-0219H (burglary at the home of Sherry Moore).

[2] Sentenced as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2014), Edwards's sentence shall not be reduced or suspended and he is not eligible for parole or probation. Before accepting Edwards's proposed plea at the January 18, 2017 hearing, the circuit court judge used the phrase "hard time" to characterize and explain the day for day sentencing mandated by the habitual offender enhancement. Edwards indicated that he understood the impact of the enhancement on his impending sentence.

motions. Approximately one month later, on May 29, 2018, Edwards filed a "Petition for an Order to Show Cause" with the Mississippi Supreme Court, alleging the circuit court's refusal to respond to Edwards's previous motions. The circuit court issued its June 26, 2018 opinion denying the PCR motions, and the petition for show cause was subsequently dismissed as moot on July 18, 2018. Aggrieved, Edwards now appeals.

## STANDARD OF REVIEW

¶5.     We will not disturb a trial court's denial of a PCR motion "absent a finding that the trial court's decision was clearly erroneous." *Jackson v. State*, 67 So. 3d 725 (¶16) (Miss. 2011); *Hughes v. State*, 106 So. 3d 836, 838 (¶4) (Miss. Ct. App. 2012). However, issues of law will be reviewed de novo. *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999).

## ANALYSIS AND DISCUSSION

¶6.     Edwards raises numerous issues before this Court. In the following discussion, we have reorganized and merged some points for clarity and concision.

### I.      Guilty Plea: Intelligent, Knowing, and Voluntary

¶7.     Edwards asserts that neither the State nor the circuit court provided notice of the amended indictment prior to the entry of his guilty plea. Edwards also claims that he was not informed that his new sentences would run consecutive to a prior fifteen-year sentence. Purportedly absent this knowledge, Edwards argues that his guilty plea was not intelligent, knowing, and voluntary. We disagree.

¶8.     Edwards presents no case law to support his assertion that the court and/or his attorney had a duty to inform him of how the sentence imposed by the court would affect his revoked

3

parole. But, it is clear from the record that the court thoroughly explained the possible sentences associated with Edwards's plea during the following exchange:

The court: I will expect you to know what you could get though, so I will ask you. The only restriction I have is I can't give you more than the max, so I expect you to know what I'm going to give you. And I'm going to ask you, Jonathan, do you know what I can give you for burglary of a dwelling?

Edwards: Yes, sir.

The court: How much?

Edwards: 3 to 25 years.

The court: That's right. And how many do you have?

Edwards: 2, sir.

The court: So what – how much are both of them together?

Edwards: The maximum.

The court: Yes, sir. They're 25 a piece, aren't they?

Edwards: Yes, sir.

The court: You understand that I can make them run consecutively if I thought it was necessary, don't you?

Edwards: Yes, sir.

The court: Do you understand that?

Edwards: Yes, sir.

The court: And how much is 25 and 25?

Edwards: 50.

The court: So you understand that I could give you 50 years.

4

Edwards:      Yes, sir.

The court:    In essence, that will be a death – a life sentence for you, wouldn't it?

Edwards:      Yes, sir.

¶9.    Additionally, testimony establishes that Edwards understood the enhancements and their prospective effect on his sentencing.  In fact, the court warned him pointedly regarding the entry of a guilty plea under the amended indictment and how the proposed plea would subject him to a day for day sentence.  The following transcript excerpt conveys the exact exchange.

The court:    The prosecutor . . . has motioned the [c]ourt back on January 6th their intent to amend the indictment.  The [c]ourt will grant this motion, and the status of Mr. Jonathan Edwards will now be as a habitual, and he understands that this does mean hard time.

              [To Edwards] Is this not correct, Mr. Jonathan?

Edwards:      Yes, sir.

The court:    All right.

State:        Your Honor, we filed a motion in all of his cases that are pending, so both of the cases that he's pleading to will be habitual.

The court:    Yes, sir.  It reflects that in the cause numbers.

State:        Yes, sir.

The court:    Jonathan, I hate to say this, but I might as well go ahead and tell you.  If I gave you 50 years, which is going to be discretionary with me, and I may – whether I do or don't, you understand? But if I did give you – whatever I give you is going to be day for day. Do you understand that?

5

Edwards:     Yes, sir.

¶10.     Edwards presents no other basis to challenge the validity of his guilty plea. A review of the plea-hearing colloquy reveals Edwards was apprised of his rights, the amendment to the indictment, and the minimum and maximum sentencing applicable at the court's discretion—all prior to pleading guilty. The court also questioned Edwards regarding his understanding of the plea petition and allowed him to ask any questions he might have had. Facing seven burglary crimes and 150 years, Edwards intelligently, knowingly, and voluntarily pled guilty, as shown by the record. Lacking evidence to the contrary, the circuit court properly denied and dismissed this claim.

## II.     Amendment of Indictment

¶11.     Edwards contends that the State's amendment, adding the habitual offender enhancement to the burglary indictments, was improper. Specifically, Edwards alleges illegal surprise and malicious prosecution.

¶12.     The record clearly reflects that Edwards was given notice of the State's amendment and the possible sentencing the court was authorized to impose as evinced by the foregoing hearing-transcript excerpts. Edwards not only acknowledged that he understood the enhancement consequences, he also raised no objections during the plea hearing. Even if Edwards's issues with the amended indictment were substantiated, the issue is moot. Absent an objection, Edwards waived his right to challenge the indictment's inclusion or exclusion of the habitual offender enhancement.

¶13.     "Outside the constitutional realm, the law is settled that with only two exceptions, the

entry of a knowing and voluntary guilty plea waives all other defects or insufficiencies in the indictment." *Conerly v. State*, 607 So. 2d 1153, 1156 (Miss. 1992) (quoting *Jefferson v. State*, 556 So. 2d 1016, 1019 (Miss. 1989)). An accused's guilty plea cannot waive "(1) the failure of the indictment to charge a criminal offense, or more specifically, to charge an essential element of a criminal offense," or waive "(2) subject matter jurisdiction." *Id.* Neither exception is presented here. But "the right to be indicted as a habitual offender is a right that can be waived, along with many others, by a knowing and voluntary plea." *Joiner v. State*, 61 So. 3d 156, 158 (¶6) (Miss. 2011). Like the defendant in *Joiner*, Edwards waived his right to contest indictment deficiencies upon the entry of the previously discussed guilty plea.

¶14. Absent any evidence to support Edwards's charge of malicious prosecution, his arguments on this issue lack merit. As such, we find the amendment to the indictments was proper.

### III. Ineffective Assistance of Counsel

¶15. Additionally, Edwards claims his counsel was ineffective because she (1) failed to conduct an investigation of facts that would have exonerated Edwards based on impossibility; (2) failed to object to Edwards's false imprisonment for a crime he could not possibly have committed; and (3) failed to object to the amendment of the indictment.

¶16. To succeed on an claim of ineffective assistance of counsel claim, a defendant must meet the standard set forth in *Strickland*, proving that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Mowdy v. State*, 638

7

So. 2d 738, 742 (Miss. 1994) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶17. To overcome the first element, the "defendant must overcome a strong presumption of effectiveness to show the attorney's performance was deficient." *House v. State*, 754 So. 2d 1147, 1153 (¶31) (Miss. 1999). "Second, the defendant must show there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hannah v. State*, 943 So. 2d 20, 24 (¶6) (Miss. 2006). Here, in addition to showing that counsel's performance was deficient, Edwards must show that "but for counsel's errors, [he] would not have pleaded guilty, would have insisted on going to trial, *and* the outcome would have been different." *Id*. (¶7) (emphasis added).

¶18. Edwards now insists that counsel failed to properly investigate alleged factual discrepancies. Much of Edwards's ineffective assistance argument centers around Edwards's claims that because he was arrested on September 7, 2015, and the indictment indicated that the offense occurred on September 8, 2015, it is impossible that he burglarized David Spiers's home. Edwards faults his attorney for overlooking what he believes to be an exculpatory finding and for allowing him to plead guilty to a crime he could not have committed. He is mistaken.

¶19. Edwards's assertion that the time-line inconsistency rendered him innocent by way of impossibility is based on a distortion of the facts. The indictment indicates the burglary was perpetrated on or about September 8, 2015. The victim had been out of town for a number of days prior to Edwards's imprisonment and only discovered and reported the burglary upon his return. Edwards had ample opportunity to carry out the deed prior to his

8

September 7 arrest and testified under oath that he was responsible. Further, this discrepancy issue was waived when Edwards pled guilty. Thus, Edwards's claim fails.

¶20. Edwards also claims counsel was deficient because she failed to object to the amendment of the indictment to sentence him as an habitual offender. But, the record does not support this contention. Edwards was initially charged on seven individual burglary-related counts. His counsel successfully negotiated the dismissal of five of the counts in exchange for his plea. In his initial PCR brief, Edwards recounted a conversation with his attorney about the prior unrelated convictions being used for enhancement. Edwards admits that she said there was nothing she could do about them. Neither the record nor Edwards's pleadings reveal any basis counsel had to challenge the validity of the past convictions or the enhancement. Edwards's own acknowledgment of the conversation indicates he had adequate knowledge and understanding of the enhancement prior to entering his guilty plea. Further, there is no indication that the outcome would have been any different if counsel had objected. Thus, this portion of the claim fails as well.

¶21. Prior to the entry of his guilty plea, Edwards affirmed to the court that his lawyer did a "good job" and that he was "satisfied" with what counsel had done. In fact, when questioned by the court, Edwards failed to indicate any displeasure with the service his lawyer provided.

¶22. The record and Edwards's arguments are devoid of any evidence to substantiate his claim of ineffective assistance of counsel. The court found that Edwards did not meet the *Strickland* standard, and we agree. Accordingly, the circuit court properly denied and

9

dismissed this claim.

## IV. Due Process and Equal Protection Rights Violation

¶23. Finally, Edwards argues that his due process and equal protection rights were violated. Edwards claims that (1) he was falsely arrested and (2) his involuntary plea caused him to be falsely imprisoned.

¶24. With regard to Edwards's claim of false arrest, this Court has held that

> [a] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of his constitutional rights that occurred prior to the entry of the guilty plea.

*Battaya v. State*, 861 So. 2d 364, 366 (¶5) (Miss. Ct. App. 2003) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). Accordingly, any claim of false arrest and imprisonment prior to the plea was waived.

¶25. As explained in the preceding discussion, Edwards's plea was found to be intelligent, knowing and voluntary. In order to enter an intelligent, knowing, and voluntary guilty plea, a defendant must be advised of the charges against him and the consequences of the plea. *Garlotte v. State*, 915 So. 2d 460, 466 (¶20) (Miss. Ct. App. 2005) (citing *Alexander v. State*, 605 So. 2d 1170, 1172 (Miss. 1992)). The record clearly indicates that Edwards was repeatedly advised of the charges against him and the consequences that could flow from his plea. Thus, the guilty plea was valid, and Edwards's claim of false imprisonment is without merit.

¶26. There is no support for the present claims that Edwards was denied due process or

equal protection rights. Unsubstantiated, the circuit court properly denied the relief requested and then dismissed the claims.

## CONCLUSION

¶27.   For the foregoing reasons, we affirm the circuit court's denial of Edwards's PCR motions.

¶28.   **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**